In re John Frederick
ANWILER, Debtor.

Gregory PATCHETT and Kathleen
Griffin, Appellants,

v.

John Frederick ANWILER and Timothy
Cohelan, Chapter 7 Trustee, Appellees.

BAP No. SC–89–1504–VAsJ.
Bankruptcy No. 88–21120–B7.
Adv. No. C88–0321–B7.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted Oct. 18, 1989.

Decided July 12, 1990.

Charles S. Bargiel, Santa Barbara, Cal., for appellants Gregory Patchett and Kathleen Griffin.

David L. Buchbinder, San Diego, Cal., for appellees John Frederick Anwiler and Timothy Cohelan, Chapter 7 Trustee.

## OPINION

Before VOLINN, ASHLAND and JONES, Bankruptcy Judges.

VOLINN, Bankruptcy Judge:

### OVERVIEW

The debtors filed their chapter 7 petition in the U.S. Bankruptcy Court for the Central District of California, which issued a "§ 341 notice" setting the date for the first meeting of creditors, and specifying the deadline for filing complaints objecting to discharge. Before the first meeting date or the complaint deadline, the case was transferred to the Southern District of Cali-

fornia, which issued a new § 341 notice specifying a new and later date for the first meeting, and a new and later date for the filing of complaints objecting to discharge.

The appellants filed a complaint objecting to discharge after the deadline specified in the first notice, but before the one specified in the second notice. The bankruptcy court granted the debtor's motion to dismiss and the appellants appeal. We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

The appellants, Gregory Patchett and Kathleen Griffin, hold a state court judgment for $447,641.02 against the debtor. The appellants contend that the judgment debt is excepted from discharge under 11 U.S.C. § 523.[1]

On January 21, 1988, the debtor filed a voluntary chapter 7 petition in the Bankruptcy Court for the Central District of California. The clerk of that court sent out a standard § 341 notice ("the First Notice") setting March 22, 1988, as the date for the first meeting of creditors, and May 23, 1988, as the last day for filing complaints under §§ 523 or 727.

The case was transferred to the Bankruptcy Court for the Southern District of California on Mr. Patchett's motion, in which Ms. Griffin joined. The transfer occurred on March 8, 1988, which was prior to the date set for the first meeting of creditors in the Central District.

On March 29, 1988, the clerk for the transferee court sent out its standard § 341 notice ("the Second Notice") which set April 20, 1988, as the date for the first meeting of creditors, and June 20, 1988, as the last day for filing complaints objecting to discharge.

On June 17, 1988, the appellants filed a complaint objecting to discharge under §§ 727(a) and 523(c). The appellants contend that they filed the complaint in good

---

1. Unless otherwise specified, section and chapter references refer to the Bankruptcy Code, 11 U.S.C. §§ 101–1330.

faith reliance on the Second Notice and the deadline specified in it.

On April 13, 1989, the court below granted the debtor's motion to dismiss the complaint on the grounds that it was filed after the applicable deadline, instructing the debtor to present an order of dismissal. *Patchett v. Anwiler (In re Anwiler)*, 99 B.R. 41 (Bankr.S.D.Cal.1989). The debtor's order was entered on May 19, 1989. The appellants filed a notice of appeal on May 27, 1989.

## ISSUE

Should the complaint objecting to discharge have been allowed to stand when it was filed after the deadline established in the First Notice, but before the later deadline specified in a Second Notice, which was issued before the first deadline?

## DISCUSSION

### A. *Complaint Deadline*

Bankruptcy Rule 4004(a)[2] provides that

In a chapter 7 liquidation case a complaint objecting to the debtor's discharge under § 727(a) of the Code shall be filed not later than 60 days following the first date set for the meeting of creditors held pursuant to § 341(a).

Rule 4007(c) sets the same deadline for complaints under § 523(c). The creditors are generally notified of the first meeting date and the complaint deadline via a "§ 341 notice" which the court clerk generates mechanically whenever a case is opened, transferred, or converted. It is this practice that gave rise to the controversy in this appeal; the effect of a second § 341 notice, specifying a later meeting date and complaint deadline, is not clear in light of Rules 4004(a) and 4007(c).

■ In this case, the First Notice set the first date for the meeting of creditors, thereby determining the complaint deadline. Although creditors' meetings may be

continued, the complaint deadline is calculated from the first date set, regardless of when the meeting is actually held. *In re Rhodes*, 61 B.R. 626, 629 (9th Cir. BAP 1986). In particular, the transfer of a case from one district to another, and the issuance of a second § 341 notice, does not invalidate or displace a complaint deadline triggered by an act of the first court. *See Urtabek Systems, Inc. v. Lochrie (In re Lochrie)*, 78 B.R. 257, 260 (9th Cir. BAP 1987); *In re Lewis*, 71 B.R. 633, 635 (Bankr.N.D.Ill.1987); *In re Riso*, 48 B.R. 244, 246 (Bankr.D.N.H.1985), *aff'd* 57 B.R. 789 (D.N.H.1986); *cf. In re Miller*, 485 F.2d 74, 76 (5th Cir.1973).

Rule 9006(b)(3) provides that "[t]he court may enlarge the time for taking action under Rules ... 4004(a) [and] 4007(c) ... only to the extent and under the conditions stated in those rules." Rules 4004 and 4007 provide that the court may extend the complaint deadline (1) on motion of a party in interest, (2) after notice and a hearing, and (3) if the motion is made before the expiration of the deadline. *See also Leisure Dev. Inc. v. Burke (In re Burke)*, 95 B.R. 716, 717 (9th Cir. BAP 1989). There was no such motion, notice, or hearing in this case, however, so the complaint deadline was not extended beyond the date specified in the First Notice.[3]

### B. *Allowance of Late Filing*

■ In certain circumstances, however, pleadings filed *after* an applicable deadline may be permitted to stand where an otherwise diligent party files late in reliance on a misleading act of the court. Although there are no such cases in the Ninth Circuit involving conflicting § 341 notices, we note that in the case of appeal deadlines, the Ninth Circuit has adopted the doctrine of "unique circumstances" which in certain cases allows an appellant to maintain an appeal that would otherwise be barred as untimely. *See United Artists Corp. v. La Cage Aux Folles, Inc.*, 771

**2.** Unless otherwise specified, references to rules refer to the Bankruptcy Rules.

**3.** We note that under *Burke*, one could argue that the Second Notice effected a timely extension of the deadline set by the First Notice. We

do not reach that issue, however, because we rule that the complaint should have been allowed to stand even assuming that the applicable deadline was the one specified in the First Notice.

F.2d 1265 (9th Cir.1985); *Hernandez–Rivera v. Immigration and Naturalization Service,* 630 F.2d 1352 (9th Cir.1980).[4] Under that doctrine a court will permit an otherwise untimely appeal to stand if (1) judicial action indicated to the appellant that its assertion of its right to appeal would be timely; (2) such judicial action occurred prior to the expiration of the official time period, such that the appellant could have given timely notice had it not been lulled into inactivity; and (3) the appellant reasonably and in good faith relied upon such judicial action. *La Cage Aux Folles,* 771 F.2d at 1268.

■ Courts have applied reasoning analogous to the "unique circumstances" doctrine to allow non-discharge complaints to stand under circumstances similar to those before us. In *In re Riso,* the underlying bankruptcy case was also filed in one district and transferred to another. 48 B.R. 244 (Bankr.D.N.H.1985), *aff'd,* 57 B.R. 789 (D.N.H.1986). The case was transferred after the date set for the initial creditors' meeting, but before the complaint deadline specified in the first court's notice. 48 B.R. at 245.

After the transfer but before the first complaint deadline, the second court granted a creditor's motion to extend the first court's complaint deadline. *Id.* One week later, the transferee court issued a second § 341 notice specifying an even later deadline for complaints. *Id.* at 246. The creditor filed a complaint after the first deadline as extended by the second court, but before the deadline specified in the second court's § 341 notice. *Id.*

The court ruled that the deadline from the first court, as extended, was the opera-

tive one, and that the subsequent inconsistent § 341 notice was erroneous. *Id.* The court found, however, that the creditor had reasonably relied on the erroneous notice. *Id.* The court concluded that it had the power under § 105 to "correct its own mistakes," and it exercised that power to extend the complaint deadline to allow the creditor's complaint to stand. *Id.* The court noted that the prejudice to the debtor was minimal because the deadline was only extended approximately five weeks, and the debtor could have brought the erroneous notice to the court's attention and requested that it be corrected. *Id.* On appeal, the district court affirmed the lower court's reasoning in all respects. 57 B.R. at 793–94.

The *Riso* case strongly supports the appellants' position here. As in *Riso,* the appellants relied on the court's erroneous notice. The appellants submitted a declaration alleging such reliance, and the record does not reflect any evidence to the contrary.

■ One court has suggested that a creditor may not reasonably rely on a second § 341 notice that appears to extend the complaint deadline, when the notice is issued over the name of the court clerk rather than a bankruptcy judge, and when there was no previous motion to extend the complaint deadline. *See In re Kearney,* 105 B.R. 260, 263, 264–65 (Bankr.E.D.Pa. 1989). With all due respect, we are not inclined to view the action of an official of the court, regularly taken, as one which may be considered as detached from the institutional structure of which he is a member. For the purposes of the unique circumstances doctrine, where the clerk of

---

**4.** This doctrine was first articulated by the Supreme Court. *See Wolfsohn v. Hankin,* 376 U.S. 203, 84 S.Ct. 699, 11 L.Ed.2d 636 (1964) (per curiam); *Thompson v. INS,* 375 U.S. 384, 84 S.Ct. 397, 11 L.Ed.2d 404 (1964) (per curiam); *Harris Truck Lines v. Cherry Meat Packers, Inc.,* 371 U.S. 215, 83 S.Ct. 283, 9 L.Ed.2d 261 (1962) (per curiam). At least six other circuits have either expressly or impliedly adopted the doctrine. *See McKee v. Bi–State Development Agency,* 801 F.2d 1014 (8th Cir.1986); *Marane, Inc. v. McDonald's Corp.,* 755 F.2d 106, 111 n. 2 (7th Cir.1985) (doctrine inapplicable on facts); *Willis*

*v. Newsome,* 747 F.2d 605, 606–07 (11th Cir. 1984) (per curiam); *Myers v. Stephenson,* 748 F.2d 202, 205–06 (4th Cir.1984) (dicta); *Aviation Enterprises, Inc. v. Orr,* 716 F.2d 1403, 1406 n. 25 (D.C.Cir.1983) (per curiam); *Alvestad v. Monsanto Co.,* 671 F.2d 908, 911 (5th Cir.) (doctrine inapplicable on facts), *cert. denied,* 459 U.S. 1070, 103 S.Ct. 489, 74 L.Ed.2d 632 (1982). *But see Alaska Limestone Corp. v. Hodel,* 799 F.2d 1409, 1412 (9th Cir.1986) (doctrine does not apply to clerk's failure to notify one of two co-counsel of the entry of final judgment).

the court issues a notice under the authority of the court and on its behalf, the court may not then disclaim such a notice. Nor should a party be responsible for a possible procedural defect in a notice or order issued by the court where the defect is not apparent from the face of the document, and such party lacks notice or knowledge of such defect.

The appellee attempts to distinguish *Riso* based on the fact that the creditor there moved for an extension of the deadline before its expiration, demonstrating his diligence. This fact cuts both ways, however. The creditor in *Riso* might reasonably have questioned the validity of a notice sent by the clerk's office that was inconsistent with the extension explicitly granted by the same court only a few days earlier. Here, the creditor reasonably could have assumed that the deadlines set by the transferee court superceded the deadlines set by the court in the improper venue, and therefore that a motion to extend the deadline was unnecessary.

In *In re Miller*, 485 F.2d 74 (5th Cir. 1973), a case under the former Bankruptcy Act was filed in Florida and transferred to Louisiana. Before the transfer, the Florida referee set a deadline for filing claims; after the transfer, the Louisiana referee set a later claims deadline. A creditor (the IRS) filed a claim after the first deadline but before the second.

The court held that the first deadline was the operative one, but found that the IRS relied on the second notice as an apparent extension of the claims deadline. 485 F.2d at 76. As in *Riso*, the *Miller* court was unwilling to bar the creditor's untimely assertion of its rights when the creditor was delinquent only because of its good faith reliance on the court's own notice. In both cases, the court recognized that the clerk's ministerial error cannot enlarge the parties' substantive rights, but nonetheless felt compelled to exercise its equitable powers to protect an innocent party relying on the court's notices. *See also In re Hershkovitz*, 101 B.R. 816, 817–19 (Bankr.N.D. Ga.1989) (complaint filed late in reliance on deadline specified in a second § 341 notice, issued prior to original complaint deadline, as result of change in trustee, was permitted to stand).

*Riso, Miller,* and *Hershkovitz* are all consistent with an analysis under the unique circumstances doctrine. Although in each case the court recognized that the operative deadline was the one established by the original notice, all three courts found that the claimants had reasonably relied on the subsequent notice, and therefore allowed the late claims to stand. The same analysis applies in the instant case, and the appellant's complaint should have been allowed to stand.[5]

Appellee cites a number of cases as authority for its assertion that the appellants' complaint was properly dismissed. However, these cases are not controlling on the facts before us. *In re Rhodes*, 61 B.R. 626 (9th Cir. BAP 1986), as discussed above, establishes that the continuation of the meeting of creditors does not affect the deadline for filing complaints under Rules 4004(a) and 4007(c). It does not, however, involve a transfer and the setting of a second date for filing complaints, or any other erroneous or misleading act by the court, and does not discuss what circumstances would justify a late filing.

*In re Lewis*, 71 B.R. 633 (Bankr.N.D.Ill. 1987), is readily distinguishable from the case at bar because there the complaint deadline had run prior to the transfer that precipitated the later § 341 notice. Allowing a new complaint deadline to be set in that situation would invite a dilatory creditor to attempt to revive his rights after the expiration of the complaint deadline by seeking the transfer of the case to another

---

5. This holding is further supported by *In re Sibley*, 71 B.R. 147 (Bankr.D.Mass.1987), and *In re Hickey*, 58 B.R. 106 (Bankr.S.D.Ohio 1986). In each of those cases, non-discharge plaintiffs filed complaints late in reliance on § 341 notices that erroneously specified complaint deadlines 61 and 63 days, respectively, after the creditors' meeting dates, rather than the 60 days provided by the Rules. *Sibley* at 148; *Hickey* at 107–08. In each case, the courts allowed the late filings to stand. *Sibley* at 149; *Hickey* at 109. *But see In re Gardner*, 55 B.R. 89 (Bankr. D.C.1985).

district. Furthermore, the facts in *Lewis* do not satisfy the prerequisites of the unique circumstances doctrine because the court action allegedly indicating that the deadline had been extended did not precede the expiration of the actual deadline. *See La Cage Aux Folles*, 771 F.2d at 1268.

In the case of *In re Tatum*, 60 B.R. 335 (Bankr.D.Colo.1986), the court dismissed as untimely a complaint which a creditor filed after both the complaint deadline and the debtor's discharge. The court explicitly recognized, however, that an extension of, or an exception to the complaint deadline is warranted where a creditor files late in reliance on a mistake of the court. 60 B.R. at 337. The delinquency of the creditor before the *Tatum* court, however, resulted only from the creditor's ignorance, not from any error of the court. *See id.* at 336–37.

We note that the court below found supporting authority in *In re Richards*, 43 B.R. 554 (Bankr.D.Minn.1984), and *In re Barr*, 47 B.R. 334 (Bankr.E.D.N.Y.1985). Both of those cases, however, focussed primarily on the procedures for extending the pertinent deadlines; neither fully considered the application of the unique circumstances doctrine to a late-filed non-discharge complaint.

## CONCLUSION

In this case, the Second Notice indicated to the appellants that their complaint would be timely on the date it was filed. The transferee court issued the Second Notice prior to the deadline for filing non-discharge complaints as originally established by the transferor court. There is nothing in the record to indicate that the appellants' reliance on the complaint deadline specified in the Second Notice was not reasonable and in good faith. Under the unique circumstance doctrine the court below had, and should have exercised, the equitable power to permit the appellants' complaint to stand. The dismissal of the appellant's complaint is therefore REVERSED.