**In re John Frederick ANWILER, Debtor.**

**John Frederick ANWILER, Appellant,**

v.

**Gregory S. PATCHETT and Kathleen Griffin, Appellees.**

No. 90–56061.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 11, 1991.

Decided March 10, 1992.

As Amended on Denial of Rehearing April 8, 1992.

John F. Anwiler, pro se.

Charles S. Bargiel, Mullen, McCaughey & Henzell, Santa Barbara, Cal., for appellees.

Before FLETCHER, D.W. NELSON and BRUNETTI, Circuit Judges.

D.W. NELSON, Circuit Judge:

Appellant John Anwiler appeals from a Bankruptcy Appellate Panel decision which reversed the dismissal of appellees' complaint objecting to the discharge of the debtor and the dischargeability of the debt. The primary issue in this case concerns two notices setting conflicting deadlines, sent to the parties by two separate courts. A second issue concerns the Bankruptcy Appellate Panel's denial of Anwiler's motion to disqualify one of its members. We affirm the Bankruptcy Appellate Panel on both issues.

I.  Factual and Procedural Background.

In January 1988, John Anwiler petitioned for bankruptcy under Chapter 7 in the United States Bankruptcy Court for the Central District of California. Soon afterwards, the clerk of the Central District Bankruptcy Court sent to the parties an Order for Meeting of Creditors ("1st Notice"), over the name of Judge Ashland, a judge appointed to the Central District.[1] The 1st Notice set March 22 as the date for the meeting of creditors and May 23 as the last day to file a complaint to determine the dischargeability of debts and to object to the discharge of the debtor. Gregory Patchett, joined by Kathleen Griffin ("Creditors"), filed a motion to dismiss the petition or transfer the petition to another district. Judge Ashland heard the motion and transferred the case to the Southern District.

In March 1988, the clerk of the Southern District Bankruptcy Court sent to the parties another Order for Meeting of Creditors ("2nd Notice"), over the name of the clerk.

The 2nd Notice set June 20 as the last day to file a complaint to determine the dischargeability of debts and to object to the discharge of the debtor. The Creditors filed their complaint on June 19, alleging that the debt owed to them was exempt from discharge under 11 U.S.C. § 523 and objecting to the discharge of the debtor under 11 U.S.C. § 727.

Anwiler filed a motion to dismiss the complaint, on the ground that the complaint was untimely filed because according to Bankruptcy Rules 4004(a) and 4007(c), the complaint must be filed within 60 days of the first date set for the meeting of creditors. He argued that because the Creditors had filed no motion to extend within sixty days after the first date set for the meeting of creditors, the last date to file was May 23. The bankruptcy court agreed and dismissed the Creditors' complaint. The court held that the Creditors had failed to make a motion to extend time despite knowing the 1st Notice set May 23 as the deadline. *Patchett v. Anwiler (In re Anwiler)*, 99 B.R. 41, 46–47 (Bankr. S.D.Cal.1989) (*"Anwiler I"*). In addition, while the bankruptcy court recognized that it had the equitable power to allow the Creditors' complaint to stand, it concluded that conflicting notices sent as a result of a change in venue did not constitute a sufficiently compelling circumstance to exercise that power. *Id.* at 47.

The Bankruptcy Court's decision was reversed by the Bankruptcy Appellate Panel. *Patchett v. Anwiler (In re Anwiler)*, 115 B.R. 661 (Bankr. 9th Cir.1990) (*"Anwiler II"*). The Panel held that although Bankruptcy Rules 4004(a) and 4007(c) should be strictly applied, if a court had made a mistake upon which a party relied to its detriment, a court could use its equitable power to grant relief and correct its mistake.[2] *Id.* at 666.

---

1. The meeting of creditors is held pursuant to 11 U.S.C. § 341 and orders regarding such meetings are sometimes referred to as § 341 notices. Such notices were automatically generated whenever a case was filed, transferred or converted from one chapter to another.

2. The Panel relied upon the "unique circumstances" doctrine, which it held was analogous to the reasoning used in the cases that allowed complaints to stand under similar circumstances. *Anwiler II*, 115 B.R. at 664. The validity of the unique circumstances doctrine is open to question. *See Slimick v. Silva (In re Slim-*

After the Panel's opinion was filed, Anwiler filed a Motion for Rehearing arguing, among other things, that Judge Ashland should have disqualified himself from the Panel under 28 U.S.C. § 158(b)(3) [3], § 455(a), (b)(1), or (d)(1). Anwiler claimed that the 1st Notice and the Order transferring the case, both signed by Judge Ashland, were part of the issues on appeal and Judge Ashland should not have been allowed to decide the propriety of his own rulings. The Panel denied the motion, finding that the appeal was based on Anwiler's Motion to Dismiss the Complaint which was filed and heard in the Southern District.

Anwiler appeals the Panel's decision reversing the dismissal of the Creditors' complaint and the refusal to disqualify Judge Ashland under 28 U.S.C. § 455(a) and § 158(b)(4). This Court has jurisdiction under 28 U.S.C. § 158(c).

## II. Timeliness of the Creditors' Complaint.

On appeal from the Bankruptcy Appellate Panel, "[f]indings of fact are subject to the 'not clearly erroneous' rule, [but] conclusions of law are freely reviewable." *Tri–State Livestock Credit Corp. v. Ellsworth (In re Ellsworth )*, 722 F.2d 1448, 1450 (9th Cir.1984) (citations omitted).

Bankruptcy Rules 4004(a) and 4007(c) set a strict sixty day time limit within which a creditor may dispute the discharge of the debtor and the dischargeability of the debts.[4] Bankruptcy Rules 4004(b) and 4007(c) also provide that there will be no extension of time to file a complaint unless a motion is made before the 60 day limit has expired. In addition, Bankruptcy Rule 9006(b)(3) provides that a "court may enlarge the time for taking action [under Rules 4004(a) and 4007(c) ] only to the extent and under the conditions stated in those rules." Bankruptcy Rule 2002(f) requires the clerk to give notice of the deadline to the parties.

■ Both the Bankruptcy Court and the Bankruptcy Appellate Panel held that the Creditors' complaint was untimely filed according to Bankruptcy Rules 4004(a) and 4007(c). *Anwiler I*, 99 B.R. at 47; *Anwiler II*, 115 B.R. at 663. The Creditors' time to file their complaint began when the first date for the meeting of creditors was set and ended on May 23. Since a court no longer has the discretion to set the deadline, nor can it sua sponte extend the time to file, the 2nd Notice could not be construed as an order extending time. *See P.S.T.C. Employees Fed. Credit Union v. Kearney (In re Kearney )*, 105 B.R. 260, 263 (Bankr.E.D.Penn.1989). Absent a motion to extend, the date, once set, does not change. *See, e.g., In re Kearney*, 105 B.R. 260 (notice naming new trustee does not extend time); *First Nat'l Bank of Deerfield v. Lewis (In re Lewis )*, 71 B.R. 633 (Bankr.N.D.Ill.1987) (notice issued by second bankruptcy court after change of venue did not extend time); *DeLesk v. Rhodes (In re Rhodes )*, 61 B.R. 626 (Bankr. 9th Cir.1986) (bankruptcy court's failure to issue notice does not excuse creditor's failure to file complaint before deadline); *Montgomery Ward and Co. v. Gardner (In re Gardner )*, 55 B.R. 89 (Bankr.D.C.1985) (court has no ability to extend deadline even if the clerk miscalculated the date); *European–American Bank v. Hill (In re Hill )*, 48 B.R. 323 (N.D.Ga.1985) (notice of continuation of creditors' meeting does not extend time).

■ The Bankruptcy Court and the Bankruptcy Appellate Panel differ on the circumstances under which a court should

---

*ick )*, 928 F.2d 304, 309 n. 7 (9th Cir.1990). However, we need not address this issue at this time, since we hold that the power to grant the relief at issue in this case derives from 11 U.S.C. § 105(a).

**3.** It appears Anwiler meant 28 U.S.C. § 158(b)(4).

**4.** Bankruptcy Rule 4004(a) states that "a complaint objecting to the debtor's discharge under § 727(a) of the Code shall be filed not later than 60 days following the first date set for the meeting of creditors held pursuant to § 341(a)." Bankruptcy Rule 4007(c) contains the same time limit regarding dischargeability of debts under § 523(c).

exercise its equitable power.[5] One of the first cases to address the issue of equity was *Francis v. Riso* (*In re Riso*), 48 B.R. 244 (Bankr.D.N.H.), *aff'd*, 57 B.R. 789 (D.N.H.1986). In *Riso*, a second notice was sent to the parties after the case was transferred to the proper venue. The creditor relied upon the second notice and filed his complaint over one month late. The *Riso* court held that as a court of equity, a bankruptcy court has "the power to 'correct its own mistakes' ... under § 105(a) of the Bankruptcy Code.... The mistake in this case was the mistake of 'the court' and should be corrected by the same in the absence of any substantial prejudice to any party."[6] *Riso*, 48 B.R. at 246. In affirming the *Riso* decision, the district court acknowledged that a bankruptcy court cannot use its equitable power to create new substantive rights. However, allowing the complaint to stand "will not *create* a substantive right that is not manifest within the Code or Rules, but merely allow [the creditor] to *exercise* that substantive right." *Riso*, 57 B.R. at 793.

Other courts have recognized their ability to use their equitable power to correct their mistakes. In *Dwyer v. Hershkovitz* (*Matter of Hershkovitz*), 101 B.R. 816 (Bankr.N.D.Ga.1989), a party was misled by a second notice, sent after a change in the trustee. The court concluded that its equitable powers should only be exercised under extreme circumstances, but that those circumstances were present. "[W]here the clerk issues a second § 341 notice containing a new bar date prior to the expiration of the first bar date and there is no reason for a creditor to question the second notice, this Court's equitable powers will be used to prevent an injustice." *Id.* at 819. In *Brown v. Sibley* (*In re Sibley*), 71 B.R. 147 (Bankr.D.Mass. 1987), the clerk miscalculated the date on the § 341 notice by one day. The court stated that Bankruptcy Rules 4004(a) and 9006(b)(3) are "primarily directed at the situation where failure to act within the prescribed time period is due to the neglect or delay of the parties themselves. Here ... the blame for delay rests squarely on the Court's and clerk's shoulders." *Id.* at 148.[7]

---

**5.** In bankruptcy cases, a court's equitable power is derived from 11 U.S.C. § 105(a) which provides: "The court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."

**6.** The *Riso* court noted that the second notice had the name of a bankruptcy judge typed at the bottom, and it "purports to be an 'order' of the bankruptcy court." *Id.* at 246. In *Kearney*, the court distinguished *Riso* on the ground that *Riso* turns on the "conclusion that the parties relied upon an order of the court, rather than a notice of the clerk." *Kearney*, 105 B.R. at 265. *See also Oak Hollow South Associates v. Cortes* (*In re Cortes*), 125 B.R. 418, 420 (Bankr.E.D.Pa.1991); *Fallang v. Hickey* (*In re Hickey*), 58 B.R. 106, 108 (Bankr.S.D.Ohio 1986). The Panel properly rejected this distinction. "[W]e are not inclined to view the action of an official of the court, regularly taken, as one which may be considered as detached from the institutional structure of which he is a member." *Anwiler II*, 115 B.R. at 664. We agree that reliance on a formal notice issued by a clerk can be considered reasonable.

**7.** Equitable relief was also granted in: *Leisure Dev. Inc. v. Burke* (*In re Burke*), 95 B.R. 716 (Bankr. 9th Cir.1989) (Fed.R.Civ.P. 60(a) and Rule 9024 provide that courts have the power to correct clerical errors); *In re Wellman*, 89 B.R. 880 (Bankr.D.Colo.1988) (two notices were sent out due to change in venue and there was evidence the debtor deliberately filed in the wrong venue); *In re Hickey*, 58 B.R. 106 (Bankr. S.D.Ohio 1986) (clerk miscalculated deadline by three days).

Other cases have reached the same result but for different reasons. In *American Express Centurion Bank v. Schoofs* (*In re Schoofs*), 115 B.R. 1 (Bankr.D.D.C.1990), a new notice was sent to the parties after a change in trustee. The court allowed an untimely complaint to stand, holding that Bankruptcy Rules 4004 and 4007 "unequivocally require that notice of the deadline for filing discharge and dischargeability complaints 'shall' be given. That means notice of the correct bar date. To hold that the notice requirement is satisfied if creditors receive notice of conflicting bar dates, the erroneous one following the first, would render the notice requirement meaningless." *Id.* at 3–4. *See In re Cortes*, 125 B.R. 418 (Bankr.E.D.Pa.1991); *Herbert v. Schwartz* (*In re Schwartz & Meyers*), 64 B.R. 948 (Bankr.S.D.N.Y.1986). "This notice requirement ... negates any presumption that creditors are familiar with the time limita-

Allowing a court to correct its mistakes is not inconsistent with the purpose of Bankruptcy Rules 4004 and 4007. Under the prior bankruptcy rules a party requesting an extension of time after the time to file had passed could plead excusable neglect. When the new rules eliminated excusable neglect as a remedy, the parties were put on notice that they must be diligent in pursuing their claims. The intent behind the rules is not circumvented by allowing an untimely complaint to stand when a party relied on a court document sent before the deadline had expired. It would be very harsh indeed to deny equitable relief in cases where the delay in filing is not due to the fault of either party. While it is true that the Creditors could have made a motion to extend time if they were confused about the proper date for filing the complaint, Anwiler could have also asked the court for clarification. As between two innocent parties "[i]f one party must bear a loss, it should be the Debtor because he had notice of the erroneous date and had greater incentive to examine and correct the notice. It does not serve the Debtor well in equity to object to the complaint after the Claimants have reasonably relied on and complied with the erroneous notice." *Sibley*, 71 B.R. at 149.

In this case, the confusion resulted from two courts' setting two different deadlines. The notices were required by law, and appeared to be valid. The Creditors could have reasonably believed that the 2nd notice was operative since it was issued by the court which had jurisdiction over the case. The equitable power given to courts by 11 U.S.C. § 105(a) would be meaningless if courts were unable to correct their own mistakes.

tion[s]" of Rules 4004 and 4007. *Id.* at 953. If a court, or its clerk, is required to send out a notice fixing a deadline, it would be illogical not to require that the notice be accurate. A party should not be penalized if the court's defective notice conflicts with a procedural rule.

The court in *Schoofs* stated in a footnote that it doubted that § 105(a) could override a Bankruptcy Rule. However, if its construction of Rules 4004, 4007 and 2002(f) is correct, § 105(a) would not be used to override any Rules, but to enforce them.

We therefore agree with the Bankruptcy Appellate Panel that the Bankruptcy court had the equitable power to permit Patchett's complaint to proceed in spite of its untimely filing. Further, we agree with the Bankruptcy Appellate Panel that it would be an abuse of discretion in the circumstances of this case to dismiss Patchett's complaint on the grounds that it was untimely filed. We therefore affirm the Panel's decision reversing the Bankruptcy court.

### III. Disqualification of Judge Ashland.

■ Anwiler also appeals the Panel's denial of his Motion for Rehearing on the ground that Judge Ashland should have disqualified himself under 28 U.S.C. § 455(a) and § 158(b)(4).[8] The Panel's denial of the Motion for Rehearing regarding the disqualification of Judge Ashland is reviewed for an abuse of discretion. *United States v. Studley*, 783 F.2d 934, 939 (9th Cir.1986).

We first turn to Anwiler's claim that Judge Ashland should have been disqualified under 28 U.S.C. § 158(b)(4).[9] Anwiler claims that the 1st Notice and the order transferring the case were the transaction underlying his appeal. The Panel properly rejected this claim. The order challenged on appeal is the order of the Southern District dismissing the Creditors' complaint. That order is the origin of the appeal, not the 1st Notice, nor the order transferring the case. It was not an abuse of discretion for the Panel to deny Anwiler's motion.

■ We now turn to Anwiler's claim that Judge Ashland should have disqualified himself under 28 U.S.C. § 455(a).[10] There

8. Anwiler cited § 158(b)(3) but he quoted § 158(b)(4) in his papers. We are assuming that § 158(b)(4) is the ground he intended to assert.

9. Section 158(b)(4) states that "a bankruptcy judge may not hear an appeal originating within a district for which the judge is appointed."

10. Section 455(a) states that "[a]ny justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which

is a threshold issue of whether Anwiler's motion to disqualify Judge Ashland was timely made. Although section 455(a) contains no express time limit, the Ninth Circuit has held that there is a timeliness requirement inherent in the section. *United States v. Conforte*, 624 F.2d 869, 880 (9th Cir.1980) ("[T]imeliness cannot be disregarded in all cases involving the delicate matter of disqualification under section 455 ..."), *cert. denied*, 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980).

In this case, Anwiler filed his Motion for Rehearing on July 20, 1990, eight days after the Panel's opinion was entered. Oral argument was heard on October 18, 1989. Thus, Anwiler knew for at least nine months that Judge Ashland would be deciding his appeal. Anwiler admitted he was aware of Judge Ashland's participation in October 1989, at oral argument, nine months before he filed the motion. His reason for waiting to file the motion was that "it would be presumptuous for me to impune [sic] Judge Ashland's integrity for not disqualifying himself from the decision of the B.A.P. before the opinion was released."

When the evidence on which a motion to disqualify is based is known beforehand, waiting until after the case, or in this instance the appeal, has been decided before bringing a disqualification motion raises the spectre of judge shopping. Imposing a timeliness requirement prevents a waste of judicial resources. If there is no such requirement, a party can wait until the trial or appeal is over and if unhappy with the result then bring the motion to disqualify. Here, Anwiler waited to see the Panel's opinion before attempting to disqualify Judge Ashland when he should have brought any motions as soon as he discovered the possible grounds for disqualification.

IV. Conclusion.

The decision of the Bankruptcy Appellate Panel allowing the Creditors' complaint to

stand is affirmed. The order of the Bankruptcy Appellate Panel denying Anwiler's motion to disqualify Judge Ashland is also affirmed.

---

his impartiality might reasonably be questioned."

