In re Fred J. BRACH, d/b/a B &
B Carpentry, and Sonya M.
Brach, Debtors.

HARTJE LUMBER, INC., Plaintiff,

v.

Fred J. BRACH, d/b/a B & B Carpentry,
and Sonya M. Brach, Defendants.

Bankruptcy No. 94–22669–7.
Adv. No. A95–2043–7.

United States Bankruptcy Court,
W.D. Wisconsin,
Eau Claire Division.

Aug. 3, 1995.

Stephen D. Chiquoine, Chiquoine & Krueger, Reedsburg, WI, for Plaintiff.

Melvin L. Hoffman, La Crosse, WI, for Defendants.

*MEMORANDUM OPINION, FINDINGS OF FACT, AND CONCLUSIONS OF LAW*

THOMAS S. UTSCHIG, Bankruptcy Judge.

As will be explained in further detail in a moment, an unfortunate thing happened in the main case of these debtors/defendants. Quite simply, the Court made a mistake, and the question is whether the Court can, or should, correct its mistake. Because this case and the case of Steve Boshardy, Jr. and Debra L. Boshardy[1] involve identical issues

---

1. Case No. 94–22668–7; a similar adversary proceeding is pending in that case, styled Hartje Lumber, Inc. v. Steve Boshardy, Jr., d/b/a B & B Carpentry, and Debra L. Boshardy, Adversary

of fact and law, the Court will treat both cases together and shall enter a similar order in both cases. Hartje Lumber, Inc. initiated these adversary proceedings against the defendants in an attempt to have its claim of $37,355.57 declared nondischargeable under 11 U.S.C. § 523(a)(4). Presently before the Court is the motion to dismiss which the defendants have filed. The defendants contend that the plaintiff's claims should be dismissed because the plaintiff failed to file its objections to their discharge within 60 days of the first meeting of creditors, as required by Bankr.Rule 4007(c). In response, the plaintiff argues that because the Court did not issue a notice of the deadline for filing objections to discharge until recently, its complaint is timely.

The operative facts are as follows. Debtors Fred J. Brach and Steve Boshardy, Jr. jointly operated a business called B & B Carpentry. Brach and Boshardy filed separate bankruptcy cases on October 4, 1994. Each debtor filed jointly with his respective wife, and stated in the caption of his petition that he operated a business under the name "B & B Carpentry." On October 11, 1994, the bankruptcy court clerk's office mailed a Notice of Commencement of Case in each case to all parties in interest. Both notices provided that the meetings of creditors in these cases would be held on November 15, 1994. However, the notices failed to specify a bar date for filing objections to the debtors' discharge, apparently due to a mistake by the clerk processing the petitions. Instead, in each case the notice indicated that the debtor was a "partnership," rather than two married individuals filing jointly.[2]

On February 23, 1995, after the clerk's office became aware of the erroneous notices, additional notices were sent to all parties in interest. These amended notices specified

that the deadline for filing objections to discharge under either § 523 or § 727 would be March 27, 1995. However, these amended notices were mailed *after* the original bar date should have expired (i.e., about January 15, 1995). Thereafter, the defendants filed a motion to "vacate" these notices, based upon their argument that the court is without the power to extend the bar date in the absence of a timely request for an extension by a party in interest. That motion was withdrawn by consent of the parties so as to permit the issue to be more properly raised in the context of an adversary proceeding. On March 27, 1995, the plaintiff filed its complaints objecting to the debtors' discharge. The defendants' motions to dismiss were filed on April 6, 1995.

The crux of the dispute is whether the Court can or should permit this adversary proceeding to continue given that (i) the complaint was filed after the deadline for filing objections to discharge apparently expired, and (ii) the plaintiff failed to request an extension of time within the appropriate time period. The bankruptcy rule both parties point to as controlling is Bankr.Rule 4007(c), which provides:

> A complaint to determine the dischargeability of any debt pursuant to § 523(c) of the Code shall be filed not later than sixty days following the first date set for the meeting of creditors held pursuant to § 341(a). The court shall give all creditors not less than 30 days notice of the time so fixed in the manner provided in Rule 2002.[3] On motion of any party in interest, after hearing on notice, the court may for cause extend the time fixed under this subdivision. The motion shall be made before the time has expired.

No. A95-2044-7. The plaintiff in both cases is represented by Stephen D. Chiquoine, while the defendants are represented by Melvin L. Hoffman.

2. The confusion may have resulted from the inclusion of the "d/b/a" language in the petition, which the clerk might have understood to mean that each debtor and his wife were operating B & B Carpentry as a partnership. Nonetheless, this conclusion was in error, and the Court is left,

like all the king's horses and all the king's men, trying to put Humpty Dumpty together again.

3. Rule 2002(f) provides that:

... the clerk, or some other person as the court may direct, shall give the debtor, all creditors and indenture trustee notice by mail of ... (5) the time fixed for filing a complaint to determine the dischargeability of a debt pursuant to § 523 of the Code as provided in Rule 4007....

Each party, naturally, has directed the Court's attention to a different part of the rule. The defendants argue that the clear import of the rule is that the 60–day period runs from the meeting of creditors absent a motion to extend. The plaintiff, on the other hand, contends that the 30–day notice which the rule states "shall" be sent by the court triggers the running of the time to file an objection, and that in the absence of such a notice, the time simply does not begin to run.

As this issue does not appear to have been addressed by the Seventh Circuit, there is no directly controlling precedent. There is also a fair degree of dispute among the reported cases, to which the Court now turns its attention. In support of their position, the defendants argue that the time period specified in Rule 4007(c) is jurisdictional in nature, and that no extension of time may be granted except in strict conformity with the rule. They cite *Taylor v. Freeland & Kronz*, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992) for the proposition that "deadlines mean what they say," and that the same analysis the Supreme Court applied to the deadline in Rule 4003(b) should be applied to Rule 4007(c).[4] However, the *Taylor* case dealt with the interpretation of not only Rule 4003(b) but also § 522(*l*) of the code. The Supreme Court found that the interplay between the code section and the rule mandated the result in that case. The language of § 523 and Rule 4007(c) do not compel the conclusion suggested by the defendants. Accordingly, while this Court agrees that in general deadlines should mean what they say, *Taylor* is simply not controlling on the issue presently before the Court. *See In re Isaacman*, 26 F.3d 629, 635 (6th Cir.1994).

The defendants have cited numerous cases to support their "jurisdictional" argument. The most compelling of these cases is *Neeley v. Murchison*, 815 F.2d 345 (5th Cir.1987). In *Neeley*, the creditor filed his objection to the debtor's discharge ten days after the deadline. The notice sent by the clerk's office specified the date for the meeting of creditors, but left blank the space reserved for the deadline for discharge objections. The creditor was represented by counsel and appeared at the meeting of creditors. When the attorney made inquiries with the clerk's office regarding the deadline for objections, he was apparently informed that no deadline had been set. When his complaint was dismissed as untimely, the creditor appealed, contending that the clerk's failure to give the 30–day notice suspended the running of the 60–day deadline. The court rejected this argument, stating:

> In today's case Neeley was not notified of the exact bar date but he knew of the bankruptcy proceedings. Neeley's counsel received notice of the date of the initial meeting of creditors and in fact attended the meeting. Indeed, even before the meeting, Neeley had himself obtained a modification of the stay from the bankruptcy court. At that time, the factual basis of his objection, the fraudulent conduct of the debtor, was established. Under these circumstances, counsel's reliance on the blank in the form and on the oral assurances from the clerk's employees was misplaced ... [w]e do not condone the clerk's error or suggest that the notice provision is without force to prevent an obvious injustice to the creditor. Faced with a practical inconsistency in the requirements of Rule 4007(c), we conclude that because Neeley

---

**4.** The defendants also cite *Taylor* for the proposition that it "overruled" this Court's decision in the case of *In re Staniforth*, 116 B.R. 127 (Bankr. W.D.Wis.1990), in which this Court held that the equitable powers specified in 11 U.S.C. § 105 permitted a bankruptcy court to consider untimely objections to a debtor's exemption claims. While *Taylor* did hold that untimely objections to exemption claims would not be permitted in that case, it is clear from the Supreme Court's opinion that it simply *declined* to consider the § 105 issue because the trustee had raised it for the first time in his appeal to the Supreme Court. *See* 503 U.S. at 644–46, 112 S.Ct. at 1648–49,

118 L.Ed.2d at 288. While subsequent cases of the Courts of Appeals do reflect an interpretation of *Taylor* that seems antithetical to *Staniforth*, *see, e.g.*, *Matter of Kazi*, 985 F.2d 318, 322 (7th Cir.1993) (failure of trustee to object in writing to debtor's exemption precluded examination of merits of exemption); *Matter of Sadkin*, 36 F.3d 473, 478 (5th Cir.1994) (even if exemption claim is wholly without merit and devoid of statutory basis, property is exempt under § 522(*l*) if there are no timely objections), this Court does not need to consider the continued validity of *Staniforth* to resolve this case, and will not do so.

had notice of the bankruptcy proceedings and more than ample opportunity to protect his rights under § 523(c), the purpose of the notice provision was met. *Id.* at 347.

Other cases cited by the defendants echo this theme. The court in *In re Rockmacher,* 117 B.R. 69 (Bankr.S.D.N.Y.1990) dealt with a creditor who received notice of the creditors' meeting, attended the meeting, and participated vigorously in it. The court found that the creditor's due process rights had not been affected by the clerk's failure to send notice of the deadline required by Rule 4007(c), as the creditor did in fact receive notice which apprised it of the action and afforded it the opportunity to present its objections. The court then stated, in what appears to be the core of the defendants' position, that:

> The error here was the clerk's. There is no reason why the debtors, who were innocent of any wrongdoing, should be penalized because of it. To allow [the creditor] to benefit because of a mere clerical error, when astute counsel had all the necessary information before him, defeats the purpose behind the strict and expedited time periods placed in the bankruptcy rules. 125 B.R. at 384.[5]

The creditor's response to these arguments is a strict interpretation of the second part of Rule 4007(c), which places a burden upon the court to send out notice of the deadline for filing objections to discharge. The creditor argues that as the rule states that the court "shall" issue a 30–day notice of the deadline for objections, this "mandatory" language precludes the running of the 60–day period until such a notice has actually been issued. In support of this contention, the creditor cites the case of *In re Schwartz & Meyers,* 64 B.R. 948 (Bankr.S.D.N.Y.1986).

The facts which were before the court in *Schwartz & Meyers* are remarkably similar to those in the present case. The court clerk

sent an initial notice to all creditors advising them of the meeting of creditors, but failed to indicate the last day for creditors to file complaints to determine dischargeability of debts. The day after the expiration of the 60–day period, the clerk sent an amended notice which stated that the clerk had "inadvertently" left out the discharge deadline in the prior notice, and therefore "set" the deadline for filing objections. Thereafter, several creditors filed objections to discharge based upon the deadline contained in the amended notice.

The debtor argued that the creditors' complaints should be dismissed, as they had failed to file the complaints within 60 days of the meeting of creditors. The court, in examining the text of Rule 4007(c), stated:

> This notice requirement ... negates any presumption that creditors are familiar with the time limitation provided by Rule 4007(c). To read the rule otherwise and thereby retain the 60 day deadline for filing dischargeability complaints is contrary to interpretation of the rule as a whole ... and ignores the mandatory nature of the phrase "the court *shall* give all creditors not less than 30 days notice of the time so fixed in the manner provided in Rule 2002." *Id.* at 953 (emphasis in original).

Accordingly, the court held that the notice was the "necessary predicate and trigger" to the running of the 60–day period, and that the "amended notice" was not an extension at all, as the original 60–day period simply did not begin to run until the notice was sent. *Id.* In the *Schwartz* court's opinion, this conclusion was mandated because creditors had a right to assume they would receive all statutory notices from the bankruptcy court. In the absence of such notices, the court would not deny them their day in court when they relied in good faith upon the court to, in essence, do its job. *Id.* at 955. The same result was also reached by the court in the case of *In re Podzamsky,* 124 B.R. 612

---

5. In a similar vein, in a case not cited by the defendants, the Eleventh Circuit adopted the rationale of the *Neeley* and *Rockmacher* courts in rejecting a creditor's argument that the clerk's failure to send notice of the deadline to file objections essentially extended the time to file a complaint. *In re Williamson,* 15 F.3d 1037, 1039 (11th Cir.1994). The court found that the creditor had unreasonably relied upon the blank notice, and very easily could have calculated the notice himself. *Id.*

(Bankr.M.D.Fla.1991), another case cited by the plaintiff.

As the defendants accurately point out, however, *Schwartz* was roundly criticized by the court in *Rockmacher*, and its conclusion was rejected by the courts in *Neeley* and *Williamson*. It is also fair to say that such a strict interpretation of the language of 4007(c) could place a creditor who actually received notice of the bankruptcy proceedings on a better footing than an unscheduled creditor who simply learns of the bankruptcy through the grapevine. *Rockmacher*, 117 B.R. at 70. Additionally, the Court notes that in a decision not cited by either party, this Court has held that the requirements of Rule 4007(c) are binding upon the parties even if notice of the deadline for filing complaints is not received from the court. *In re Juzwiak*, 78 B.R. 215 (Bankr.W.D.Wis.1987). This Court observed in *Juzwiak* that the time limitations "are set in stone," and that the court is prohibited from extending the deadline for a creditor who allegedly fails to receive notice but has knowledge of the bankruptcy. *Id.* at 217. While *Juzwiak* did not involve an erroneous notice, it does make favorable reference to *Neeley* in support of its conclusion that a creditor's actual receipt of the 30–day notice is irrelevant. *Id.* Given the holding in *Juzwiak* and the fact that none of the remaining cases cited by the plaintiff concern the exact issue before the Court, it is difficult to accept the plaintiff's strict interpretation of Rule 4007(c).

Further, even if the plaintiff were to be relieved of the burden to ascertain the correct deadline, there is a question as to what, if anything, the Court may do to remedy the situation. Several recent cases suggest that the court cannot issue the type of amended notice sent by the clerk in this case. *See, e.g., Isaacman, supra,* 26 F.3d at 632 (rules prohibit court from sua sponte extending the time in which to file dischargeability complaints); *In re Themy,* 6 F.3d 688, 689 (10th Cir.1993) (bankruptcy courts cannot extend deadline in absence of motion); *In re Anwiler,* 958 F.2d 925, 927 (9th Cir.1992) (bankruptcy courts may not sua sponte extend time to file complaints). The plaintiff would have this Court disregard these authorities, as well as *Neeley* and *Williamson*, and validate the amended notice.

However, the Court need not wrestle with whether issuance of a new bar date after the expiration of the first deadline is an impermissible extension of the time to file dischargeability complaints as this case can be resolved without addressing the issue. Regardless of the propriety of issuing an amended notice setting another date, the case law does not deny creditors *all* relief where the court's mistake in issuing a notice resulted in the dissemination of erroneous information to the creditor, and under *Isaacman, Themy* and *Anwiler* the court can accept an untimely complaint if it is justified under the circumstances. Indeed, the holding in these cases is in accord with *Neeley* and *Williamson,* in that even those courts would seemingly permit the Court to fashion relief under 11 U.S.C. § 105 so as to avoid the detrimental effects of a notice containing misleading information. *Williamson,* 15 F.3d at 1039; *Neeley,* 815 F.2d at 347 n. 5.

In *Anwiler,* the bankruptcy clerk issued two conflicting notices. The creditor, in apparent reliance upon the second notice, filed a complaint after the time to file technically expired. In considering the debtor's argument that the complaint should be dismissed as untimely, the Ninth Circuit recognized what it considered to be the court's inability to extend the deadline upon its own initiative. Nonetheless, the court also recognized that, as a court of equity, the bankruptcy court has the power to correct its own mistakes under § 105. *Id.* at 928. The court found that it was not inconsistent with the intent of Rule 4007(c) to permit an untimely complaint to stand when the creditor had relied upon an erroneous court document, and stated:

> It would be very harsh indeed to deny equitable relief in cases where the delay in filing is not due to the fault of either party. While it is true that the Creditors could have made a motion to extend time if they were confused about the proper date for filing the complaint, Anwiler could have also asked the court for clarification. *Id.* at 929.

In *Isaacman,* the court actually found that the bankruptcy court *abused its discretion* in

failing to accept an untimely complaint where the creditor had relied upon erroneous notices. There, a second notice had been issued after the case had been transferred. After concluding that the debtor should bear the loss because the debtor had the greater incentive to examine and correct erroneous notices, the court found that the creditor had relied upon the second notice and the representations of the clerk's office as to the deadline. The court stated:

> We believe that defendant's argument misconstrues the policy behind placing the burden on a debtor to alert a bankruptcy court of an erroneously scheduled second bar date. The scheduling of a bar date is generated solely by the bankruptcy court. Thus, if the bankruptcy court erroneously schedules a second bar date, neither the creditors nor the debtor is to blame. If the second bar date is not recognized, then no parties are prejudiced. But if a creditor reasonably relies upon the second bar date, then both parties are prejudiced through no fault of their own. In such a situation, equity dictates that it is the debtor who must bear the loss between innocent parties because the debtor has notice of the erroneous bar date and has greater incentive to examine and correct the notice ... [t]hus, the controversy in this case was not, as defendant would have it, caused by plaintiff's failure to follow the bankruptcy rules, but rather, was caused by defendant's failure to alert the bankruptcy court to the erroneous second bar date. *Id.* at 635–36.

*Themy* also dealt with a situation in which the clerk's office sent a second, erroneous notice of the deadline to file. Again, however, the court permitted the creditor to file the complaint, finding that the bankruptcy court's acceptance of the complaint was not an extension of the deadline but an exercise of the court's power to correct its own mistakes. 6 F.3d at 689. The court stated that a creditor should be entitled to rely upon the court's orders, and where the court's act "affirmatively misleads the creditor as to a deadline," the court bears the responsibility for correcting its error. *Id.* at 690.

■ *Isaacman*, *Anwiler*, and *Themy* all involve situations in which the bankruptcy court issued two conflicting notices of the deadline for filing objections. As a result of the contradictory or misleading nature of these notices, the courts recognized the ability of a court to exercise its power under § 105 to correct its mistake by accepting those complaints which are actually filed. *Isaacman*, 26 F.3d at 635; *Themy*, 6 F.3d at 689.[6] *Anwiler*, 958 F.2d at 929. The fundamental basis for these decisions was the fact that the bankruptcy court issued conflicting and misleading notices, and needed to correct the mistake. Unlike those cases, this case does not involve the issuance of conflicting notices but rather one erroneous notice with a second notice sent only to correct the earlier omission of the bar date. Nonetheless, this Court finds that the same considerations should apply if that notice is misleading in its own right.

Thus, while the defendants have argued that this is a "blank" notice case, the mere fact that only one notice was issued in this case does not end the inquiry. Such a formulistic approach to the issue does not adequately address the competing concerns or the possible prejudice raised by a notice which, when considered in light of the surrounding circumstances, has the potential to mislead creditors regarding the deadline for filing objections to a debtor's discharge. Here, the notice did not include a deadline, but that failure was for a reason. The notice indicated that a "partnership" had filed bankruptcy. Accordingly, no deadline for objections to discharge was stated because no discharge would be granted. *See* 11 U.S.C. § 727(a)(1) (discharge may only be granted in Chapter 7 if debtor is an individual).

■ While this notation was in error, the Court finds that, when considered together with the debtors' names and their use of a

---

6. This relief may be contrasted with a formal extension of the time to file a complaint objecting to the discharge of a debt, which all three courts agreed the bankruptcy court may not do on its own initiative. As indicated previously, the Court does not need to reach a conclusion on this issue, and does not do so. The relief fashioned by the Courts of Appeals in these cases is sufficient to address the problem now before this Court.

trade name in the petition, this notation could mislead creditors into believing that no discharge was to be issued. The notice did have the potential to lead creditors, in reliance upon that mistaken belief, to conclude that they did not need to file a dischargeability complaint. Creditors are entitled to rely upon what they receive from the court. *Isaacman*, 26 F.3d at 632. Based upon the circumstances of this case, it was reasonable for a creditor to hold off filing a complaint. *Themy*, 6 F.3d at 690.

▅▅▅ The Court notes that the plaintiff's attorney has affirmatively represented that he was unaware that the notice did not contain a bar date, and that he never received a copy of the notice from his client. However, these facts alone are not determinative.[7] Had the bar date been on the notice, the plaintiff might have communicated that date to its counsel, or there might have been some other communication which would have alerted the plaintiff to the impending deadline. Such speculation only highlights the difficulty of demonstrating that a party "relied" upon the erroneous notice, as even in those cases involving multiple notices it is possible for a creditor to calculate the deadline on its own. *See Isaacman*, 26 F.3d at 633 (plaintiff acted reasonably, despite counsel's acknowledgment that they "messed up" by not asking for a continuance); *Anwiler*, 958 F.2d at 929 (creditor could have asked for continuance but debtor could have asked for clarification). Given the difficulty of proving reliance, the potential for prejudice or confusion becomes important. The notice here was objectively misleading, and the presence of the bar date could have spurred the plaintiff to timely action.

▅▅▅ This Court's prior opinion in *Juzwiak* recognized that, in general, the deadline requirements of Rule 4007(c) are "set in stone." 78 B.R. at 217 (quoting *In re Shelton*, 58 B.R. 746, 749 (Bankr.N.D.Ill. 1986)). However, the case law permits relief under § 105 where it is the court's own act

that is at issue, and the general rule must bend under the equities of the situation. *Isaacman*, 26 F.3d at 636. The potential for prejudice exists from what is clearly a misleading notice. As between the defendants and the plaintiff in this case, all are innocent parties affected by the court's mistake. Nonetheless, the court finds that the debtors should bear the burden of that mistake, as the debtors had the ability and the incentive to review the notice and notify the court of the error. *Isaacman*, 26 F.3d at 635–36. They did not do so, and may not now complain that the creditor failed to file a complaint when the erroneous notice did not notify the creditor of the requirement to do so.

Accordingly, the defendants' motion to dismiss is denied, and this case shall proceed to trial.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅

---

7. The plaintiff's counsel has, however, stressed the fact that his client and the defendants were in the process of negotiating a settlement, and that the plaintiff did not proceed with an adversary filing in part because of these ongoing discussions. The case law is clear that neither "excus-

able neglect" by the creditor's attorney nor affirmative representations by the debtors will justify an untimely complaint; the only "extraordinary circumstance" justifying relief from the deadline of Rule 4007(c) is the Court's own error. *In re Kennerley*, 995 F.2d 145 (9th Cir.1993).