In re Walter WELLMAN aka Walter D. Wellman and W.D. Wellman, Debtor.

Bankruptcy No. 87–B–15253–M.

United States Bankruptcy Court, D. Colorado.

Aug. 19, 1988.

Edward P. Carlstead, Denver, Colo., for debtor.

Melissa McCue, Castle Rock, Colo., for trustee.

## MEMORANDUM OPINION AND ORDER

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER comes before the Court on Debtor's Motion to Set Aside Section 341 Meeting and Deadline to File Dischargeability Complaints. The Debtor objected to the United States Trustee of Colorado setting a second Section 341 meeting hearing date and a second bar date by which dischargeability complaints were to have been filed, after the Debtor's Chapter 7 case had been transferred to Colorado by the Bankruptcy Court in Arizona, the original venue of Debtor's case.

### FACTS AND BACKGROUND [1]

1. The Debtor, Walter D. Wellman, has been for 20 years and at all times pertinent to this Chapter 7 case, a resident of Denver, Colorado, and employed full-time in Denver as Senior Pastor of the First Church of the Nazarene.

2. The Debtor filed his Petition in bankruptcy on September 8, 1987 in Arizona. Over objections of the Debtor and pursuant to creditors' efforts, the Bankruptcy Court in Arizona ordered on December 2, 1987 that the case be transferred to Colorado "... in the interest of justice and for the convenience of the parties."

3. The reasons for which venue was transferred to Colorado include, but are not limited to: (a) Debtor's domicile, principal place of residence, and only place of employment were in Colorado, (b) the "... vast majority of Debtor's obligations are to Colorado creditors" (about 85%) and over

---

1. All findings of fact are based on Debtor's Schedules and Statements, and the Court file, or are derived from a hearing held in Open Court on July 21, 1988, pursuant to 11 U.S.C. § 707(b), wherein the Debtor and Debtor's son, Walter Wellman, Jr., testified.

three million dollars in debt was owed to Colorado creditors, and (c) the only basis for venue in Arizona was the Debtor's ownership of a house in Arizona valued at $200,000.00, variously described as his "retreat," "retirement home," or "vacation house," and undeveloped land described as "2½ acres in Pinal County." [2]

4. The Court in Arizona sent notice to creditors advising them that the Section 341 meeting was scheduled for October 20, 1987 and the last day within which to file objections to discharge in bankruptcy pursuant to 11 U.S.C. §§ 523 or 727 was December 21, 1987. The Section 341 meeting was evidently held. No objections to discharge were filed in Arizona.

5. The Bankruptcy Court in Colorado, after transfer of the case, sent notice to creditors on February 24, 1988, advising them that a Section 341 meeting was scheduled for March 17, 1988 and the last day within which to file objections to discharge pursuant to 11 U.S.C. §§ 523 or 727 was May 16, 1988. Debtor then filed a "Motion to Set Aside Section 341 Meeting and Deadline to File Dischargeability Complaints."

6. On Debtor's Motion for Forthwith Hearing to bar the Section 341 meeting, the Court ordered the Section 341 hearing to be conducted and reserved its ruling, pending the parties' briefing the issues and further research, on the question of whether or not an extended, or second, bar date on filing a dischargeability complaint was permissible.

7. At least one creditor, Security Pacific Executive Professional Services, Inc. ("Security Pacific"), prepared and tried to file a complaint in the Colorado Bankruptcy Court pursuant to 11 U.S.C. § 523(a)(2) in *November, 1987,* but the filing was rejected by the Bankruptcy Court Clerk. After the case was transferred to Colorado, Security Pacific again filed a Complaint pursuant to 11 U.S.C. § 523(a)(2) on February 1, 1988. That case is being held in abeyance before another Judge in this District, pending this decision as to whether or not the extended, or second, May 16, 1988 bar date, was permissible. A second creditor, Alan Jahde, filed a dischargeability complaint on March 11, 1988, but that matter was settled by Debtor's payment to Mr. Jahde, and the Complaint was dismissed with prejudice.

8. Facts which might bear on the issue of an exception to discharge pursuant to Section 523, or a bar to discharge in bankruptcy pursuant to Section 727 of the Code, include, but are not limited to [3]:

a. Debtor transferred his interest in the Arizona "retirement home" to his wife on May 14, 1987, but after "consultation on the impact of Section 727 of the Bankruptcy Code" with counsel, he set aside the transfer one day after filing his bankruptcy petition.

b. Debtor also transferred his interest in the "2½ acres in Pinal County" to his wife on May 14, 1987, but because "this was a preference ..." it also was to have been set aside, however, that had not been accomplished as of the July 21, 1988 hearing.

c. Each of the above transfers of an asset from the Debtor to his wife

---

2. Debtor maintained, when contesting change of venue from Arizona to Colorado, that his residence was in Arizona. Later testimony of the Debtor revealed that he was domiciled and resided in Colorado and he went to Arizona perhaps four to six times a year, for several days at a time, as a retreat, to study, read and relax.

3. These facts are primarily based on Debtor's Statement of Affairs and Schedules, but are also derived in part from testimony given at a hearing held pursuant to 11 U.S.C. § 707(b). The hearing was held on the Court's motion, to determine whether or not the Debtor's case should be dismissed because the granting of relief under the Bankruptcy Code would constitute a "substantial abuse" of Chapter 7. Certain of the facts which prompted the hearing included (1) scheduled monthly income of $6,361.00, or annual income of $76,330.00, (2) scheduled monthly expenses of the Debtor of $6,614.96, including $2,278.96 for housing, $800.00 for "charitable contributions," $355.00 for utilities, and $75.00 for laundry and cleaning, and (3) the circumstances surrounding the selection of the Arizona venue and unexplained reasons for filing in Arizona rather than Debtor's domicile, his place of residence and employment, and the location of virtually all Debtor's creditors. The Court has prepared a separate opinion with findings of fact and conclusions of law on the issues raised in its decision to *not* dismiss the case pursuant to Section 707(b).

was made one day prior to a creditor, Sun Savings and Loan Association, obtaining a substantial deficiency judgment against the Debtor and within four months of the Debtor filing for bankruptcy. Debtor acknowledged the transfers were conducted for the purpose of protecting those assets from Sun Savings and Loan Association's judgment and lien rights.

d. Debtor purportedly prepared at least four different financial statements prior to filing bankruptcy. One of the financial statements purported to show Debtor's *net worth* of approximately $1,702,000.00 on June 1, 1986, 15 months before filing for bankruptcy, and a second financial statement purported to show net worth of approximately $278,000.00 on May 14, 1987, only four months prior to filing for bankruptcy.

## DISCUSSION

The issue before the Court is whether or not, under any circumstances, the United States Trustee can schedule an extended, or second, Section 341 meeting of creditors and set an extended, or second, bar date for filing a Section 727 complaint objecting to discharge or a Section 523 complaint to determine dischargeability of a debt. Stated another way, can a debtor be subjected to a second Section 341 meeting and an extended, or second, bar date for allowing creditors the right to file dischargeability complaints in bankruptcy.

This Court believes that, under the facts and circumstances of this case, the Debtor can be required to attend a second Section 341 meeting and can be subjected to an extended, or second, bar date allowing creditors to file a complaint to determine dischargeability of a debt. To decide otherwise in this case is manifestly unjust.

The decision in this case is based on concepts of equity and is the product of unusual facts and history. The decision rests, primarily, on the special circumstance of the Debtor filing bankruptcy in a venue other than where the Debtor was domiciled, had his principal residence, was permanently employed, owned property, and a venue other than where virtually all his debt was incurred and where all of his creditors were located. This feature of the case, coupled with the inherent increased cost, inconvenience, difficulty, and disadvantage necessarily occasioned by creditors outside of Arizona, the Debtor's venue of choice, compel a decision affording to the creditors a fair and meaningful opportunity to (1) participate in a Section 341 meeting and (2) file a dischargeability complaint pursuant to Section 523 or Section 727.

The decision is all the more justified when it is evident from the bankruptcy Schedules and Statement of Affairs, and the Court record, that the *Debtor had reason to believe, at the time of filing the petition in bankruptcy*[4], *that his prepetition conduct might well generate dischargeability questions or litigation. Not incidentally, of course, Debtor's prepetition conduct did generate at least two dischargeability complaints.*

The decision rests, secondarily, on the element of error by the Bankruptcy Court Clerk in refusing to accept timely filing of at least one creditor's dischargeability complaint. This rejection by the Court Clerk improperly and unfairly denied to a creditor, its opportunity and right to challenge the discharge of its claim against the Debtor.

The question of when dischargeability complaints may be filed pursuant to Sections 523 and 727 is governed by Bankruptcy Rules 4004 and 4007 which state, in pertinent part, that objections to discharge, and requests for exceptions to discharge, must be filed not later than 60 days following the first date set for the Section 341 meeting of creditors, and a request for an extension of the 60 day period must be filed within the original 60 day time frame.[5]

---

**4.** See n. 6. at 884, *infra.*

**5.** B.R. 4004(a) states as follows: "In a chapter 7 liquidation case a complaint objecting to the

debtor's discharge under § 727(a) of the Code shall be filed not later than 60 days following the first date set for the meeting of creditors

This Court is also cognizant of that case law which holds that these filing deadlines should be strictly enforced and the Court has little or no discretion to enlarge the time period without a proper and timely motion filed by an interested party. *See, In re Fauchier*, 71 B.R. 212, 216 (9th Cir.B. A.P.1987); *In re Harvey*, 69 B.R. 411, 412 (N.D.Ohio 1987); *In re Wilferth*, 57 B.R. 693, 695 (Bankr.D.N.M.1986); *In re Gardner*, 55 B.R. 89, 90 (Bankr.D.D.C.1985); *In re Whitfield*, 41 B.R. 734, 736 (Bankr.W.D. Ark.1984). By contrast, however, *see In re Tatum*, 60 B.R. 335, 337 (Bankr.D.Colo. 1986), where Judge Brumbaugh followed the general rule, but recognized possible exceptions to the rule *if* "extraordinary circumstances" warrant or the Court provides erroneous information as to a bar date on which creditors rely to their detriment.

This Court, when looking at the facts and the circumstances surrounding this bankruptcy case filing, believes it is in the interest of justice to invoke the powers granted to it under Section 105(a) of the Bankruptcy Code, and follow the holding of *In re Riso*, 57 B.R. 789 (D.N.H.1986) so as to permit an extension of time to file an objection, or seek an exception, to the Debtor's bankruptcy discharge.

Section 105(a) provides:

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

Bankruptcy Courts are courts of equity and are governed by equitable principles.

*Riso, supra* at 793; *Matter of Ponteri*, 31 B.R. 859 (Bankr.D.N.J.1983). "The Bankruptcy Court has long been recognized as a court of equity. Although this Court should not use its equitable powers to defeat legal rights, it can, and must, use such powers to further justice and protect its own integrity." *In re Keyworth*, 47 B.R. 966, 971 (Bankr.D.Colo.1985). In the within case, the extension of time to file an objection to discharge is necessary in order to prevent an injustice and an apparent abuse of the bankruptcy process.

In *Riso*, a Chapter 7 case was filed in the Southern District of Florida and venue was eventually transferred to the District of New Hampshire. The original bar date for filing objections to discharge was set for September 7, 1984. A creditor filed a motion for extension until October 27, 1984 which was granted. Upon transfer of the case to New Hampshire, the Clerk of the Bankruptcy Court in New Hampshire sent out notices stating that December 3, 1984 was now the bar date for filing objections. This was an extended, or second, bar date. Relying on the December 3, 1984 bar date as set forth in the notice, the creditor filed a complaint on November 30, 1984 to which the debtor objected. The District Court of New Hampshire affirmed the Bankruptcy Court's decision and denied the debtor's motion to dismiss and granted the extension of time to file a complaint to December 3, 1984 as set forth in the New Hampshire Bankruptcy Court's notice.

This Court concurs with the New Hampshire District Court's assessment that a clerk's ministerial act or clerical mistake cannot alter substantive rights of parties. *Riso* at 793. But as the District Court also concluded—a conclusion with which this Court agrees—the issue becomes more complex when a change of venue occurs and/or notices are such that it is prejudicial

---

held pursuant to § 341(a).... Not less than 25 days notice of the time so fixed shall be given to all creditors as provided in Rule 2002(f), and to the trustee and the trustee's attorney."

B.R. 4007(c) states as follows: "A complaint to determine the dischargeability of any debt pursuant to § 523(c) of the Code shall be filed not later than 60 days following the first date set

for the meeting of creditors held pursuant to § 341(a). The court shall give all creditors not less than 30 days notice of the time so fixed in the manner provided in Rule 2002. On motion of any party in interest, after hearing on notice, the court may for cause extend the time fixed under this subdivision. The motion shall be made before the time has expired."

for a party to rely on one or the other. This is particularly true where a debtor might purposely file in a distant venue and thus foster an apparent manipulation and abuse of the bankruptcy process.[6]

"The equitable principles of bankruptcy law require that not only should the Debtor receive a 'fresh start,' but also that the creditors should be treated fairly and equitably." *Matter of DANVER Enterprises, Inc.*, 60 B.R. 568, 570 (Bankr. W.D.Pa. 1986). Indeed, if any equitable imbalance is visited upon any party it should be upon a debtor that selects a distant venue which obviously imposes on creditors increased cost, inconvenience, difficulty and disadvantage.

For this Court to *not* extend the bar date within which objections to discharge could be filed, would send a message to debtors and counsel who wish to disadvantage creditors, by filing bankruptcy in a distant district. Debtors could then, by design, file in a remote locale from their creditors and thus attempt to thwart the duties of a trustee and the rights of the creditors in the bankruptcy process. It is not unknown for debtors to "shop" for a forum to their greatest advantage. Certainly while that tactic is not prohibited, it is likewise not to be encouraged or abused where it will unfairly deprive creditors of relative rights.

The flexibility afforded to debtors to select an available venue is not also a license to bully creditors.[7]

The extension of time here will not create a substantive right, but will merely allow the trustee and the creditors to meaningfully exercise those rights which are granted under the Code and under the Rules. *Riso, supra* at 793. The Bankruptcy Code and the protection it affords debtors should be used as a shield and not as a sword to skewer creditors. The equitable powers of Section 105(a) are available to prevent a potential abuse of filing a bankruptcy case in a distant district so as to disadvantage creditors and the Court, as well as diminish the integrity of the bankruptcy process, the Bankruptcy Court, and the Bankruptcy Code.

This Court is familiar with *In re Lewis*, 71 B.R. 633 (Bankr.N.D.Ill.1987), wherein the Illinois court did not permit an extension of time to file a complaint despite the change of venue. This Court agrees with the Illinois Court's conclusion that the "result is perhaps harsh," but disagrees with its rationale that "the rules are an absolute statute of limitations which must be interpreted as such." Such a reading, given the circumstances in this case, would render Section 105(a) without meaning and encour-

---

**6.** Debtor testified that he filed in Arizona to avoid embarrassing his church and congregation in Colorado. The possibility of adverse publicity and Debtor's connection to the church was deemed, by the Debtor, a compelling reason to file in a venue other than Colorado. The record demonstrates also, however, that the Debtor had reason to anticipate the filing of dischargeability litigation by creditors in Colorado. Two bankruptcy eve transfers of assets to his wife, pre-bankruptcy financial statements showing substantial net worth, and Debtor's repeated refusal to answer questions about assets and values set forth on various financial statements—all coupled with the actual filing of two dischargeability complaints—create a strong inference, at least, that venue was selected in a distant locale to inconvenience or disadvantage Debtor's creditors.

**7.** Venue of a case is governed by 28 U.S.C. § 1408 which provides in pertinent part: **"Venue of cases under title 11.** Except as provided in section 1410 of this title, a case under title 11 may be commenced in the district court for the

district—(1) In which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one hundred-and-eighty day period than the domicile, residence, or principal place of business, in the United States, or principal assets in the United States, of such person were located in any other district; or (2) in which there is pending a case under title 11 concerning such person's affiliate, general partner, or partnership."

Whether Arizona was an improper or "wrong" district for venue is not an issue which is dispositive of this case. Debtor's two assets located in Arizona make it arguable, at least, that Arizona was an acceptable venue. Nonetheless, pursuant to Section 1408, the Arizona Judge's findings and decision, and this Court's Opinion, venue in Colorado is clearly the proper, most correct, most convenient and, certainly, the most logical and fair venue for this Debtor.

age an abuse of the system without this Court having an ability to correct such an abuse.

IT IS THEREFORE ORDERED that the Debtor's Motion to Set Aside Section 341 Meeting and Deadline to File Dischargeability Complaints shall be and is hereby DENIED. The extension of time to file an objection, or obtain an exception, to discharge pursuant to the United States Trustee's notice setting May 16, 1988 as the bar date for filing such a dischargeability complaint is GRANTED. All complaints pursuant to Sections 523 or 727 of the Bankruptcy Code, or extensions to file such complaints, which were filed on or before May 16, 1988 shall be and are hereby deemed timely.