In re Kenneth L. ISAACMAN, Debtor.

J.E. NICHOLSON, Jr., Plaintiff,

v.

Kenneth L. ISAACMAN, Defendant.

Bankruptcy No. 92–26078–B.
Adv. No. 92–0961.

United States Bankruptcy Court,
W.D. Tennessee, W.D.

Jan. 22, 1993.

that time. Service has been made pursuant to applicable Federal Rules of Bankruptcy Procedure ("F.R.B.P.") upon the debtor as defendant and the debtor's attorney. The defendant moved to dismiss the adversary proceeding for failure to file a timely complaint, and this motion was heard upon the motion, written response, memoranda, and statements of counsel for the parties. No sworn proof was introduced at the hearing. This proceeding is core pursuant to 28 U.S.C. § 157(b)(2)(I), and this opinion contains findings of fact and conclusions of law pursuant to F.R.B.P. 7052.

## SUMMARY OF FACTS

The debtor filed a Chapter 7 case in the Northern District of Georgia on March 19, 1992. A § 341(a) meeting of creditors was set by that court clerk for April 28, 1992, and the notice of commencement of the case, of the meeting of creditors and of fixing of dates was mailed by that bankruptcy court clerk to creditors stating that the "deadline to file a complaint objecting to discharge of the debtor or to determine dischargeability of certain types of debts" was June 29, 1992. This notice appears in this court's case file and has attached to it a list of creditors to whom the notice was mailed by that clerk. That notice includes J.E. Nicholson, the plaintiff in this adversary proceeding. Counsel for both parties have represented to the court that Mr. Nicholson appeared at the § 341(a) meeting in the Northern District of Georgia,[1] making it obvious that Mr. Nicholson had notice of the filing of the Chapter 7 petition there. Further, an attorney for Mr. Nicholson in this adversary proceeding was also in attendance at the § 341(a) meeting, although that attorney did not represent Mr. Nicholson at that time.

On May 6, 1992, the United States Trustee for the Northern District of Georgia filed a motion to transfer venue to the Western District of Tennessee and a hearing was requested. Apparently, no hearing was conducted; rather, an order styled

Randall J. Fishman, Memphis, TN, for Kenneth L. Isaacman.

J. Kevin Smith, Margaret B. White, Smith & Diment, Carrollton, GA, for J.E. Nicholson, Jr.

Preston Wilson, Chapter 7 Trustee, Memphis, TN.

Jimmy Croom, Memphis, TN, for United States Trustee.

## MEMORANDUM OPINION AND ORDER ON DEFENDANT'S MOTION TO DISMISS

WILLIAM H. BROWN, Bankruptcy Judge.

This adversary proceeding was initiated by a complaint filed on September 21, 1992, and the filing fee of $120.00 was paid at

---

1. Two affidavits were filed with the motion to dismiss and those affidavits state that the § 341(a) meeting was held on April 28, 1992, and that Mr. Nicholson attended.

"Consent Order On United States Trustee's Motion To Transfer Venue" was entered on June 1, 1992, in the Northern District of Georgia. This court's case file contains the original order transferring venue and a letter dated June 4, 1992, of transmittal from the clerk of the Bankruptcy Court in the Northern District of Georgia to the clerk of this court transferring the entire case file. The file was received in this court clerk's office on June 8, 1992, and the case was assigned a new bankruptcy number in this district, 92–26078–B. Under this court's computerized system of handling new cases, and upon this case being assigned a new case number for this district, a routine notice of commencement of the case under Chapter 7, meeting of creditors and fixing of dates was generated, setting a new § 341(a) meeting in the Western District of Tennessee for July 22, 1992, and setting a new deadline date to file complaints objecting to discharge or to determine dischargeability of certain types of debts for September 21, 1992. *See, e.g., In re Lewis,* 71 B.R. 633, 635 (Bankr.N.D.Ill.1987). The court clerk's stamp indicates that the notice generated by this court clerk's office was entered on the court's docket on June 25, 1992, and mailed on that same date to the debtor and all creditors. It therefore appears that the notice generated by the clerk's office in the Western District of Tennessee was mailed prior to the expiration of the original bar date of June 29, 1992, but the court has no knowledge of when Mr. Nicholson or his attorneys received that new notice. One of the attorneys for Mr. Nicholson, who appeared at the oral hearing on this motion, stated that she called the clerk's office of this court in Memphis, Tennessee and inquired whether a new bar date for filing complaints had been set and that she was advised that a new bar date of September 21, 1992, had been set. That attorney also stated that she and co-counsel relied upon the new bar date set by the clerk's office for this court. It is obvious that the complaint was filed after the expiration of the original bar date set in the Northern District of Georgia but on the expiration date set by the clerk's office in the Western District of Tennessee.

## ISSUES

The issues presented to the court are whether the clerk's office for this court had authority to set a *new* bar date for filing objections to discharge and for complaints to determine dischargeability of § 523(c)(1) debts, and whether the plaintiff, J.E. Nicholson, Jr., and his attorneys were entitled to rely upon the second bar date, or whether the original bar date set in the Northern District of Georgia, of which Mr. Nicholson and his attorneys had constructive and actual knowledge, controls. The critical issue before the court is whether the complaint filed in this court is timely or whether it must be dismissed as being filed late.

## DISCUSSION AND CONCLUSIONS OF LAW

It first must be noted that the complaint filed in this adversary proceeding alleges that the debtor obtained an investment of money in an automobile dealership in Carrollton, Georgia, from the plaintiff by materially false representations, which misrepresentations were made with the intent and purpose to deceive the plaintiff, and the complaint further alleges that the plaintiff reasonably relied upon the debtor's false representations. The complaint also alleges that the misrepresentations were made with gross recklessness as to truthfulness. While the complaint does not allege a specific subsection of 11 U.S.C. § 523(a), it appears from the factual allegations that the complaint is relying upon 11 U.S.C. § 523(a)(2)(A), and the complaint prays for a determination that the debt of $629,000.00 is nondischargeable. Section 523(a)(2) is one of the types of debts for which the debtor receives an automatic discharge unless the affected creditor files a timely complaint to determine dischargeability. 11 U.S.C. § 523(c)(1). Federal Rule of Bankruptcy Procedure 4007(c) establishes the time for filing complaints under § 523(c) in Chapter 7, Chapter 11 and Chapter 12 cases, and that rule states that such a complaint "shall be filed not later than 60 days following the first date set for the meeting of creditors held pursuant to

Section 341(a)." F.R.B.P. 4007(c). The rule goes on to provide that the court "shall give all creditors not less than 30 days notice of the time so fixed in the manner provided in Rule 2002." F.R.B.P. 4007(c). Rule 2002(a) provides that the clerk, or another person designated by the court, shall mail that notice. Rule 4007(c) further provides that a party in interest may move the court for extension of this time, for cause, but that the motion shall be filed before the bar date has expired. Of course, if the complaint alleges a basis for exception from discharge other than those contained in § 523(c)(1), those complaints may be filed at any time. F.R.B.P. 4007(b).

In the present case, the unfortunate circumstance is that two bar dates were set by two different court clerk's offices. The first bar date, established by the clerk's office where the case was originally filed in the Northern District of Georgia, clearly fixed a bar date of June 29, 1992, and the record contains no motion for an extension of that time. In fact, at the oral hearing on this motion to dismiss, counsel for the plaintiff admitted that they did not file a motion to extend the time to file § 523(c)(1) complaints and that, in retrospect, such a motion should have been filed. The applicable rule of course provides that the bar date is sixty days following the first date set for the § 341(a) meeting of creditors, but in this case the § 341(a) meeting of creditors was actually held on the date scheduled, and the plaintiff, Mr. Nicholson, actually attended that § 341(a) meeting.

The only justification offered by the plaintiff's attorneys for what appears on its face to be an untimely filing of a complaint is that the plaintiff and his counsel were entitled to rely upon the new bar date set by the clerk's office in the Western District of Tennessee, and of course the defendant/debtor disputes that the plaintiff was entitled to rely upon that new bar date without filing a motion for extension of time to file the complaint. In a written response to the motion to dismiss, the plaintiff asserts that he was reasonably and justifiably entitled to rely on the notice issued by the clerk's office for the Western District of Tennessee and that his complaint was timely when viewed in the light of that notice. Further, the plaintiff asserts that the court should use its equitable powers under 11 U.S.C. § 105(a) "to correct any injustices resulting from a plaintiff's reliance on an erroneous bar date issued by the bankruptcy court clerk's office." Objection To Motion To Dismiss …, p. 2.

Obviously there are numerous and divergent reported cases discussing whether a complaint is untimely, and those opinions are normally factually driven. This court will not attempt to discuss all of the cases addressing this issue but will focus on the rationale behind the different approaches.

The plaintiff relies upon several cases, including *In re Anwiler*, 958 F.2d 925 (9th Cir.1992), *cert. den.*, — U.S. ——, 113 S.Ct. 236, 121 L.Ed.2d 171 (1992). In *Anwiler*, the debtor had filed his Chapter 7 petition in the Central District of California and the clerk's office for that district sent notice of the filing to creditors, which notice set May 23, 1988, as the last date to file objections to discharge and § 523(c)(1) complaints. The case was transferred to the Southern District of California and the clerk's office for that district sent a second notice setting a bar date of June 20, 1988. The complaint was filed on June 19, and a motion to dismiss asserting an untimely filed complaint was then argued. The bankruptcy court dismissed the complaint as being untimely but the bankruptcy appellate panel reversed and the Ninth Circuit affirmed that decision. The bankruptcy appellate panel's decision at 115 B.R. 661 (Bankr. 9th Cir.1990) held that relief should be given from a strict application of F.R.B.P. 4004(a) and 4007(c) if a court made a mistake upon which a party relied to its detriment. 115 B.R. at 666. In its opinion, the Ninth Circuit observed that the bankruptcy rules "set a strict sixty day time limit" within which certain complaints may be filed. 958 F.2d at 927. Further, F.R.B.P. 9006(b)(3) provides that a court may enlarge the time for filing complaints under Rule 4004(a) and 4007(c) "only to the extent and under the conditions stated in those rules." *Id.* (*quoting* F.R.B.P.

9006(b)(3)). The Circuit Court further observed that F.R.B.P. 2002(f) requires the bankruptcy court clerk to provide notice of these filing deadlines to parties in interest. 958 F.2d at 927. In the facts presented in *Anwiler*, the Ninth Circuit stated that the time to file complaints "began when the first date for the meeting of creditors was set." 958 F.2d at 927. Further, that Court observed that the second notice "could not be construed as an order extending [the] time" for filing such complaints, as the bankruptcy court had no discretion to set a new deadline. *Id.* "Absent a motion to extend, the date, once set, does not change." *Id.* (citations omitted).

However, the *Anwiler* Ninth Circuit Court went on to discuss the bankruptcy court's use of its equitable power, and discussed *In re Riso*, 48 B.R. 244 (Bankr. D.N.H.1985), *aff'd*, 57 B.R. 789 (D.N.H. 1986). "In *Riso*, a second notice was sent to the parties after the case was transferred to the proper venue. The creditor relied upon the second notice and filed his complaint over one month late. The *Riso* court held that as a court of equity, a bankruptcy court has the power to 'correct its own mistakes.' ... under § 105(a) of the Bankruptcy Code...." 958 F.2d at 928 (*quoting In re Riso*, 48 B.R. at 246). Equitable powers, the *Riso* District Court stated, could not be utilized to create new substantive rights, but could be a means of allowing a creditor to exercise its substantive rights. 958 F.2d at 928 (*citing In re Riso*, 57 B.R. at 793).

■ The *Riso* Bankruptcy Court construed the new bar date notice as an "order" of that court, and this seems to be an integral part of that court's rationale in correcting the "court's" mistake. 48 B.R. at 246. The *Riso* District Court continued with this rationale, asserting that "the bankruptcy court" had enlarged the deadline, "sua sponte." 57 B.R. at 792. Other courts have adopted the rationale that the new bar date notice is the equivalent of a court order. *See, e.g., Matter of Hickey*, 58 B.R. 106, 108 (Bankr.S.D.Ohio 1986); *compare, In re Kearney*, 105 B.R. 260, 265 (Bankr.E.D.Pa.1989). This court does not

suggest that a notice from the court clerk's office is insignificant, but a notice is not an order of the court. Generation of a notice is a clerical rather than a judicial function. *See, e.g., In re Kearney*, 105 B.R. at 265 n. 6. The notice issued by the clerk's office in this district in this case does not purport to be an order. It is not signed or stamped with a judge's signature; rather, it bears the printed name of the clerk of this court. It is captioned "notice" and this court agrees with the *Kearney* Court that it "cannot conclude than an attorney reading this form would understand it to represent an order issued by the Bankruptcy Court through one of its judges." *In re Kearney*, 105 B.R. at 265. In this specific case, the creditor was and is represented by counsel; therefore, the court is not faced with a *pro se* creditor. Further, in the absence of proof the court can not assume that the creditor's attorneys were uninformed in bankruptcy procedure or law. This creditor's attorneys did not rely upon the printed form notice setting a new bar date; rather, they relied upon information given by a deputy clerk in a telephone call to the clerk's office.

■ The court must point out that the facts are determinative of the application of its equity powers. In the present case, there was no evidence to support an assertion that the creditor reasonably relied upon the new bar date. The *Kearney* Court stated that "reliance upon information provided by a court clerk which contradicts a rule of procedure is not reasonable." *In re Kearney*, 105 B.R. at 265. As a threshold matter, this court will not presume that there was reasonable reliance in the absence of proof to support such a finding.

■ The *Anwiler* Court discussed *Matter of Hershkovitz*, 101 B.R. 816 (Bankr.N.D.Ga.1989) where "a party was misled by a second notice, sent after a change in the trustee. The court concluded that its equitable powers should only be exercised under extreme circumstances, but that those circumstances were present." *In re Anwiler*, 958 F.2d at 928. The ultimate holding of the *Hershkovitz* Court

was that "where the clerk issues a second § 341 notice containing a new bar date prior to the expiration of the first bar date and there is no reason for a creditor to question the second notice, this Court's equitable powers will be used to prevent an injustice." 101 B.R. at 819. Is there not a reason for a creditor represented by counsel to question a second bar date that conflicts with F.R.B.P. 4004(a) or 4007(c)? Of course, *Hershkovitz* involved two notices issued by the same clerk's offices and there was no change of venue. However, this distinction may not be significant. This court is compelled to agree again with the *Kearney* Court's conclusion "that a literal and strict reading of the rules is required. That is, as the bankruptcy court's discretion in this area has been eroded by carefully considered rules, the court should be cautious in exercising any equitable power." *In re Kearney*, 105 B.R. at 263 (citations omitted); *see also In re Summit Corp.*, 109 B.R. 534, 537 (D.Mass.1990) (F.R.B.P. 4007(c) restricts the court's discretion). This court is not persuaded that it should presume as a general rule that a clerk's mistake is justification for exercise of § 105(a) power.

Other courts have viewed the clerk's error to be the court's mistake. In *In re Sibley*, 71 B.R. 147 (Bankr.D.Mass.1987), "the clerk miscalculated the date on the § 341 notice by one day." *In re Anwiler*, 958 F.2d at 928. The *Sibley* Court accepted the blame for the mistake and used its equity powers to correct the error. *Id.* (*citing In re Sibley*, 71 B.R. at 148). The *Anwiler* Court concluded that "[a]llowing a court to correct its mistakes is not inconsistent with the purpose of Bankruptcy Rules 4004 and 4007." 958 F.2d at 929. However, that Court recognized that the new bankruptcy rules "eliminated excusable neglect as a remedy" for discharge and § 523(c)(1) dischargeability complaint purposes, thus putting parties "on notice that they must be diligent in pursuing their claims." *Id.* The *Anwiler* Circuit Court justified an exception from a literal application of the rules by stating: "The intent behind the rules is not circumvented by allowing an untimely complaint to stand

when a party relied on a court document sent before the deadline had expired. It would be very harsh indeed to deny equitable relief in cases where the delay in filing is not due to the fault of either party. While it is true that the Creditors could have made a motion to extend time if they were confused about the proper date for filing a complaint, [the debtor] could have also asked the court for clarification." 958 F.2d at 929. In substance, the *Anwiler* Court put the ultimate risk and responsibility upon the debtor. *Id.*

■ In some cases the facts may suggest or demonstrate that the burden for clarifying confusion rests upon the debtor. For example, the court should not encourage debtors to improperly "file in a remote locale from their creditors and thus attempt to thwart the duties of a trustee and the rights of the creditors in the bankruptcy process." *In re Wellman*, 89 B.R. 880, 884 (Bankr.D.Colo.1988). There is no proof before the court in this case that this debtor had an improper motive for filing in the Northern District of Georgia nor that this creditor was aggrieved by that filing. To the contrary, the facts before the court establish that this creditor participated in the case in the Northern District of Georgia. The facts here do not suggest that this debtor improperly manipulated the system so as to prejudice this creditor, and the court should not entertain an equitable presumption, without proof, that tips the balance in the creditor's favor. *Compare, In re Schoofs*, 115 B.R. 1, 4 (Bankr.D.D.C. 1990) (where court held "the actual bar date inapplicable if the plaintiff innocently relied on the amended notice in filing late."). This court questions whether a creditor's innocence may be presumed.

In *Anwiler*, that Court found the confusion to have "resulted from two courts' setting two different deadlines." 958 F.2d at 929. And, the *Anwiler* Court concluded that the creditors "could have reasonably believed that the 2nd notice was operative since it was issued by the court which had jurisdiction over the case." *Id.* However, the *Anwiler* Court also observed in this discussion that both notices "were required

by law." *Id.* The *Anwiler* Court gave no authority for the latter conclusion and this court questions whether that is correct. Section 341(a) merely provides that a meeting of creditors shall be held "[w]ithin a reasonable time after the order for relief in a case under this title." That section of course does not specify that a second § 341(a) meeting must be held when a case is transferred for improper venue, where, as in this case, an actual § 341(a) meeting was held in the district where the case was originally filed. F.R.B.P. 1014(a)(2) provides that upon the filing in an improper district and upon a timely motion, the case may either be dismissed or transferred to a proper district. That rule does not address the resetting of a § 341(a) meeting, and it certainly does not address a second § 341(a) meeting where one has been held. 28 U.S.C. § 1412 governs change of venue, and that section does not address a second § 341(a) meeting. Neither the Code nor rules address the setting of a new bar date when a case is transferred for improper venue. In this case, a § 341(a) meeting was actually held in the Northern District of Georgia and the creditor involved in this adversary proceeding actually attended that meeting. No one has addressed this court on the necessity of holding a second § 341(a) meeting of creditors in the Western District of Tennessee. While such a meeting might be beneficial to the new Chapter 7 trustee in the Western District of Tennessee, there has been no allegation that such a meeting was necessary for other creditors or for the trustee, to whom other methods for gaining information were available. *See, e.g.,* F.R.B.P. 2004(d).

The ultimate holding of *Anwiler* is that the bankruptcy court should utilize its equitable power under 11 U.S.C. § 105(a) to correct its own mistakes and that in the circumstances of the *Anwiler* case a dismissal of the complaint as being untimely filed would be an abuse of discretion. 958 F.2d at 929. At first examination, the facts in *Anwiler* appear strikingly similar to the facts in this case. There was a

change of venue, and a second § 341(a) and bar date notice was mailed to creditors.[2] However, the *Anwiler* Ninth Circuit Court makes an assumption that both the creditors and the debtor were innocent parties and as between such innocent parties "it should be the Debtor [to bear the loss] because [the debtor] had notice of the erroneous date and greater incentive to examine and correct the notice." 958 F.2d at 929 (*quoting In re Sibley,* 71 B.R. at 149). Viewed in equity, the debtor was found to be the loser where the creditors "reasonably relied upon and complied with the erroneous notice." 958 F.2d at 929 (*quoting In re Sibley,* 71 B.R. at 149). The *Anwiler* Court further concludes that the creditors could reasonably believe the second notice was properly issued and controlling, but this court questions that conclusion, at least in the facts presented in the present case. This creditor actually attended the § 341(a) meeting in the Northern District of Georgia and had constructive, if not actual, notice of the bar date set by that court's clerk. There has been no allegation that the creditor lacked the opportunity to file a timely complaint under the original bar date, nor has there been any allegation that the creditor lacked the opportunity or knowledge of a requirement to file a timely motion to extend the original bar date. Rather, the creditor relies solely upon a statement of counsel at the oral hearing on the motion to dismiss that counsel called the clerk's office in the Western District of Tennessee and relied upon the new bar date. In retrospect, it is clear that the creditor should have filed a motion to extend the time rather than risk the present dilemma. This case therefore presents difficult questions of whether this court should construe the second notice given to creditors by the clerk's office for this district as being a notice of a bar date upon which this creditor could reasonably rely and whether this court should construe that second notice as being a judicial mistake which should be corrected by the court

---

**2.** This is not a situation where two petitions were filed and were pending in different districts at the same time so that actions are stayed until a proper venue determination is made pursuant to F.R.B.P. 1014(b).

under its equitable power, as contrasted with whether the court should leave the burden, where it is placed by the applicable rule, on the creditor to move to extend the original bar date or to timely file a complaint within that original bar date. The rule contemplates only one bar date and no authority has been presented to suggest otherwise. As Judge James S. Sledge has recently recognized, "[i]t is clearly Bankruptcy Rule 4007(c), and not the Court, that fixes the time for filing [§ 523(c)(1) ] complaints." *In re Williamson*, 145 B.R. 329, 331 (Bankr.N.D.Ala.1992).

This court understands the view of some courts that F.R.B.P. 4004(a) and 4007(c) require a notice of a deadline for filing certain complaints and that such notice would be meaningless unless a correct date is provided by the clerk. *See, e.g., In re Schoofs*, 115 B.R. 1, 3 (Bankr.D.D.C.1990). Some courts obviously construe the rules to require that a correct notice be sent by the clerk's office. *See, e.g., In re Schoofs*, 115 B.R. at 3; *In re Schwartz & Meyers*, 64 B.R. 948 (Bankr.S.D.N.Y.1986). Other courts have viewed failure of the clerk to provide a specific bar date for § 523(c)(1) complaints as being a due process problem. *See, e.g., In re Rogowski*, 115 B.R. 409 (Bankr.D.Conn.1990).

 However, this court has difficulty seeing a due process problem or putting all of the burden upon either the clerk's office or upon the debtor in the facts before it. It must be remembered that the debtor automatically receives a discharge for those types of debts covered by 11 U.S.C. § 523(a)(2), (4) or (6). 11 U.S.C. § 523(c)(1). Only the filing of a complaint by an affected creditor prevents this automatic discharge. The debtor would have no incentive to file such a complaint before the bar date expires. Other types of debts are automatically excepted from discharge and a complaint may be filed by any interested party to determine their dischargeability at any time. F.R.B.P. 4007(b). Why then should the debtor have an incentive or a necessity to file a motion to clarify the bar date for filing § 523(c)(1) complaints, when the Code is structured to give the debtor an automatic discharge of those types of debt? The Code clearly compels affected creditors to file a § 523(c)(1) complaint and it would appear that the Code therefore places the burden on creditors to see that the complaint is timely. The court does not view failure to file within the sixty days as a jurisdictional statute of limitations; rather, this is a procedural issue. *In re Welsh*, 138 B.R. 630, 631 (Bankr.M.D.Fla.1992); *contra, In re Booth*, 103 B.R. 800, 802 (Bankr. S.D.Miss.1989). The rules may not establish substantive law but only procedural rights. F.R.B.P. 1001; *In re Welsh*, 138 B.R. at 631. One must look to the bankruptcy rules to determine when a complaint is timely filed, and in the facts presented in this case, there is no evidence to indicate that the affected creditor lacked knowledge or the advice of competent counsel concerning the application of a bar date or the necessity to file a motion to extend the original bar date.

The *Anwiler* opinion does not address the fact that bankruptcy courts in the United States are faced with a high volume of bankruptcy case filings, and it is certain that with that volume errors will occur in bankruptcy court clerk's offices. This court can not read the *Anwiler* opinion to be authority for an absolute rule that bankruptcy courts must always correct a clerk's error in favor of a creditor. Rather, this court concludes that a creditor, under similar facts, must establish by proof that the creditor reasonably relied upon the second erroneous bar date. To omit this requirement would lead to an automatic rule that creditors have a second opportunity to file complaints when the venue for a case is changed. Such a step would add a new rule that is not found in the Federal Rules of Bankruptcy Procedure and would assume that equity powers will be used without proof to support the need for such equity. This court concludes that the facts determine the outcome in this case, and the facts in this case do not demonstrate proof to show that this creditor reasonably relied upon the second § 341(a) notice and bar date erroneously set by the bankruptcy court clerk's office for the Western District of Tennessee.

■ The court will not presume reasonable reliance when the applicable rule is clear and there is no proof that the creditor's counsel were unaware of the rule. *Compare, In re Rockmacher*, 125 B.R. 380, 384 (S.D.N.Y.1991) ("Counsel obviously knew of the rule, but failed to comply with it, notwithstanding the fact that he had all the necessary information before him to protect his client's rights.") In this particular situation, assuming that counsel were unaware of F.R.B.P. 4007(c), counsel should have been alerted by the circumstances in this case that confusion could exist over which bar date controlled and that caution dictated the filing of a motion to extend the bar date. As stated earlier, there has been no showing of an inability to timely file such a motion, nor has there been a showing of an inability to timely file a complaint under the original bar date. This court finds that the affected creditor had sufficient time within the original bar date to either file his complaint or to file a motion to extend the original bar date and the court concludes that there has been no evidence to support an allegation that this creditor reasonably relied upon the second bar date. *Contrast, In re Cortes*, 125 B.R. 418, 420 (E.D.Pa.1991) (disagreeing "with the proposition that reliance on a notice issued by the clerk's office cannot be reasonable."). This court's conclusion is supported, for example, by the fact that the creditor did not file his complaint until the last day of the second bar date, September 21, 1992. There has been no showing of why the creditor delayed in filing his complaint until the last conceivable date. The complaint itself, while alleging large damages, is not overly complex, and there has been no allegation that the creditor lacked knowledge of facts upon which to base his complaint. The complaint in fact alleges that the plaintiff was misled by false representations of the debtor, which misrepresentations allegedly occurred in February, March and April of 1989, and that monies were advanced by the creditor to the debtor from April, 1989 through May, 1991. The factual allegations, in other words, refer to events occurring well before the filing of the Chapter 7 petition in the Northern District of Georgia, and, as previously stated, there is no basis upon which to conclude that this creditor was lulled into complacency by the debtor's Chapter 7 filing in that district. This creditor is represented by Georgia counsel; therefore, it can not be assumed that the filing in the Northern District of Georgia was prejudicial to this creditor or his counsel.

It is perhaps important to note that the motion for change of venue was not initiated by this creditor, but rather by the United States Trustee in the Northern District of Georgia. The case file contains a notice of the hearing on the United States Trustee's motion to change venue, set for June 12, 1992, which was mailed to creditors, including this creditor; however, the order transferring venue was entered on June 1, 1992, prior to the date for the hearing. There has been no evidence introduced to show that this creditor detrimentally relied upon the pending motion for change of venue or on the order changing venue. The order transferring venue was entered twenty-eight days prior to the expiration of the June 29, 1992 bar date, indicating that this creditor had sufficient time to either file a complaint or to move the bankruptcy court in the Northern District of Georgia or the Western District of Tennessee for an extension of that time. The result is that the complaint in this particular case is untimely, as it was filed after the expiration of the original bar date and without the filing of a timely creditor's motion to extend that original bar date or to clarify the conflicting bar dates. As previously stated, there has been no showing that this creditor lacked such an opportunity to timely address the court on the application of the second bar date.

■ The dismissal of this complaint as being untimely certainly leads to a harsh result for the plaintiff. However, as Justice Thomas has noted, "[d]eadlines may lead to unwelcome results, but they prompt parties to act and they produce finality." *Taylor v. Freeland & Kronz*, —— U.S. ——, ——, 112 S.Ct. 1644, 1648, 118 L.Ed.2d 280 (1992) (where the Supreme Court, without deciding applicability of

§ 105(a), rigidly applied F.R.B.P. 4003(b)'s thirty day deadline to object to exemptions). The Federal Rules of Bankruptcy Procedure establish a bar date for filing complaints, and, as noted previously, this is not a situation where excusable neglect under F.R.B.P. 9006(b)(1) may be utilized as an escape from F.R.B.P. 4007(c). *Compare, In re Pioneer Inv. Services Co.,* 943 F.2d 673 (6th Cir.1991), *cert. granted,* —— U.S. ——, 112 S.Ct. 2963, 119 L.Ed.2d 585 (1992).

The court admits that it is troubled that a creditor *could* be misled by a second notice of such a bar date, and if the facts demonstrated a misleading or a *reasonable* reliance on the second bar date, or if the facts demonstrated a very short time period between the expiration of the original bar date and the venue transfer, a different result could be reached. There are clearly factual circumstances where equity may demand reliance upon the second bar date,[3] but the facts in this case do not demand the exercise of such equity.

## CONCLUSION

In summary, the creditor understandably asks the court to invoke its equitable powers, but the creditor has not demonstrated by proof a basis for the use of equitable power. Rather, the creditor asks the court to construct a broad and general rule that whenever a change of venue occurs and when such a change of venue is accompanied by a second § 341(a) notice and bar date from the transferee court clerk's office, creditors are entitled to rely upon that second bar date. This court concludes that such a general rule would be overly generous and overly broad and would be an application of extraordinary equity powers without underlying facts to demonstrate the need for that equity. As stated earlier, and as is generally true in bankruptcy proceedings, the facts determine the results. The facts here do not dictate a determination that this complaint was timely filed, nor should this court exercise its equitable

powers in a manner that would be fair to the creditor and his counsel but would ignore a deadline intended to protect debtors.

The Court therefore concludes that the motion to dismiss the complaint as being untimely filed shall be granted and this complaint is dismissed.

SO ORDERED.

---

**3.** *See, e.g., In re Kearney,* 105 B.R. at 255 (providing some factual illustrations where equity may be required).